# VAN SYCKEL *v.* ARSUAGA.

## APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES FOR PORTO RICO.

No. 69.   Argued November 13, 1913.—Decided January 5, 1914.

Where appellant with ground challenges the adequacy of the findings of the court below to sustain the legal conclusions based on them, it is the duty of this court to consider and decide that question.

Under the local law of Porto Rico, if there is intrinsic ambiguity in a written instrument the right obtains to dispel such ambiguity by extraneous proof showing the circumstances under which the instrument was executed.

In this case there was such ambiguity in the contract involved as justified proof beyond the terms of the instrument to clear up the situation, and findings of the trial court based upon such proof are not void because of want of power to consider it.

The mere fact that parties seek in a lawful mode to protect legal rights by keeping alive an instrument under which possession to the property could be maintained in case of adverse decision in suits under another instrument does not indicate fraud in the transaction.

On the record in this case, *held*, that a partner who had kept alive a lease on property which his firm had acquired from him through another source of title so as to protect the interest of the firm against attacks from outside parties could not subsequently recover the property under the lease to the detriment of the other partners.

There is evident lack of merit in the contention of a partner to recover property which he sold to the partnership and was paid for, without returning the price.

THE facts, which involve the validity of a judgment liquidating and distributing the assets of a copartnership in Porto Rico, are stated in the opinion.

*Mr. N. B. K. Pettingill,* with whom *Mr. George H. Lamar* was on the brief, for appellants.

*Mr. Charles F. Carusi* for appellees.

MR. CHIEF JUSTICE WHITE delivered the opinion of the court.

When the court below delivered its opinion and made

a statement of facts it did not enter a final decree, but directed a re-statement of certain accounts to be made and ordered a survey and report as to the condition of certain real estate to the end that thereafter the case might be finally disposed of. Fixing their attention upon the controlling force of the reasons which the court had stated in its opinion and the decisive character of the findings embodied in the statement of facts, the parties who believed themselves aggrieved at once appealed, but their appeal was dismissed for want of a final judgment. 200 U. S. 624. The case is now here on an appeal from a final judgment and the contentions previously relied upon to secure a reversal are applicable and now require to be decided.

This suit was begun by the widow and heirs of Paul Van Syckel to liquidate and distribute the assets of two partnerships of which he was a member, viz., P. Van Syckel & Co. and the Santa Cruz Sugar Co. The defendants were the other members of the firms. From the petition and the documents annexed, from the answer, and a cross-petition filed by the defendants to construe and limit a document referred to as an agreement for "postponement of rights," as also from the issues taken on the cross-petition and from the opinion of the court and the statement of facts which it made it is beyond question that the only controversy between the partners arose from an assertion by the widow and heirs of Van Syckel that they were the holders of a subsisting lease covering an important piece of partnership real estate.

The solution of this controversy depended upon the answers proper to be made to the following questions: 1st, Did the lease which was owned by Van Syckel prior to the formation of the partnership of P. Van Syckel and Company pass to that firm as the result of its organization and the stipulations contained in the articles of partnership? 2nd, If the firm became the owner of the lease, was such lease extinguished by confusion (Civil Code, § 1192)

as the result of the purchase by the firm of the leased property under a foreclosure sale, and 3rd, even although as a general rule, the lease was extinguished under the conditions stated, could the surviving members of the firm be heard to deny the existence of the lease as against the widow and heirs of Van Syckel in view of the public record concerning the lease, of the stipulations of the agreement styled postponement of rights of the foreclosure proceedings, and of other declarations made in other notarial acts to which the partnership and the partners were parties?

Concluding that these questions required an affirmative answer the court below rejected the claim based upon the existence of the alleged lease. The reasons which led to this conclusion were stated in an elaborate opinion and the facts which were deemed controlling were enumerated in a statement of facts. While conceding that there is no power to review the facts, and while further conceding that if effect be given to the facts found, the judgment is clearly right, it is yet insisted by the appellants that there should be a reversal upon the following grounds: *a*, Because the ultimate findings made by the court as to the non-existence of the lease were on the face of the record manifestly alone based upon inferences drawn from parol proof conflicting with the declarations of the parties contained in notarial acts and which under the local law were not lawfully susceptible of being overthrown by parol proof; and, *b*, because moreover error is manifest on the face of the findings as well as in the legal conclusions based on the findings because it was impossible to conclude that the lease had no existence without permitting the defendants to repudiate their declarations made in notarial acts, to base a claim of right upon their deceit and fraud and to discharge themselves and their property from an obligation by giving efficacy to their wrongdoing. As these propositions in their final analysis challenge the adequacy of the findings made to sustain the legal conclusions

based on them, it is our duty to consider and to decide them. As a prelude to doing so, we make a statement of the case as established by the findings and as elucidated by the opinion of the court and the documents therein referred to.

In June, 1897, by notarial act, Paul Van Syckel leased from one Montilla, the Santa Cruz plantation except a small portion previously leased to some one else. The rent was payable monthly and the term was indeterminate; that is, was to last as long as Van Syckel chose to pay rent. The property when leased was encumbered by mortgage. Van Syckel used the leased property for the business of raising cattle and carrying on a dairy. The registration officer refusing to record the lease because of the uncertainty of the term, Van Syckel, in October, 1899, made a notarial statement, fixing a term of six years and reserving the right, at will, to fix future terms. The registering officer refusing to record this statement, Van Syckel sued to compel its registry, and was successful, the Supreme Court of Porto Rico (or the Chief Justice thereof) having affirmed an order directing the registry to be made. The holder of the mortgage on the leased property having commenced executory proceedings to foreclose, Van Syckel sued in the Provisional Court created by the American military authority to enjoin on the ground of an alleged fraudulent combination between the debtor and creditor by foreclosure of the paramount mortgage to wipe out the lease and impliedly, on the further ground that having an interest, as lessee, in paying the paramount mortgage debt, he was entitled to do so and take a creditor's legal subrogation. (Civil Code, §§ 1203, 1210 and 1211.) The foreclosure proceeding was perpetually enjoined. The mortgage creditor acquiescing in the result, in March, 1900, transferred the debt to Van Syckel. During these proceedings there was pending in the local courts, suits in one or another

form, brought by Montilla assailing the rights of Van Syckel. The exact character of these suits is not disclosed, but they are referred to in the findings and a statement on the subject is contained in *Montilla* v. *Van Syckel*, 8 Porto Rico, 153, 162.

In June, 1900, before a notary, Van Syckel and the firm of Sobrinos de Ezquiaga, an established and reputable commercial firm, formed a partnership styled P. Van Syckel & Company. The act recited that Van Syckel was the owner of enumerated property, viz: a small farm, a lot of cattle "as per inventory," a lot of personal property, constituting the plant of a dairy, such as cans, bottles, milk straining apparatus, carts, milk wagons, etc., and besides a mortgage paper secured on the Santa Cruz plantation, inventoried at about 11,000 pesos; and lastly a sum of money stated in the inventory as "value of working capital," amounting to 1111 pesos. These various items gave a total value of 30,000 pesos, and one-half, 15,000 pesos, was paid in cash by Sobrinos de Ezquiaga to Van Syckel as the purchase price of one-half the property which thus became jointly owned, and was by the joint owners, Van Syckel and Sobrinos de Ezquiaga, established as the capital of the new firm. The duration of the firm was two years and the purpose of its organization was declared to be the carrying on of a dairy business and the purchase of cattle. There were careful provisions as to the keeping and rendering of the accounts of the firm as to the equal power of management by the partners and an equal division between them of profits. There was a stipulation relating to the mortgage debt on Santa Cruz, providing that if the debtor, Montilla, paid the same the sum received should take the place of the debt as firm capital, and the firm should not be dissolved thereby, and the same result, it was expressly provided would follow in case Montilla should "recuperate the debt" and require an assignment of the same; that is, in case

Montilla by operation of legal subrogation compelled a transfer of the debt to another.

The year following, in July, 1901, the firm of P. Van Syckel & Company and P. Van Syckel individually were parties to a notarial act styled "postponement of right," by which the firm, after reciting its ownership of the mortgage claim on the Santa Cruz property and the paramount character of the mortgage as to a lease on the property, held by Van Syckel, waived the priority of the mortgage, gave precedence to the lease and expressly renounced all right of the mortgage creditor "to rescind the lease" as against Van Syckel and his "*causa habientes.*" This act was placed on the public records. In September, 1901, Van Syckel & Company commenced executory proceedings against Montilla to enforce their mortgage debt and in due course, in November, 1911, the property was adjudicated to them for two-thirds of its estimated value and as was customary under the local law, the state of the record was referred to and the priority of the recorded lease was recited.

In May, 1902, the firm of P. Van Syckel & Company was by notarial agreement extended for a period of four years to the first day of June, 1906. The articles of extension recited the original organization, the purchase from Van Syckel of the property which constituted the capital of the firm, including the debt secured by mortgage upon Santa Cruz. It then recited the foreclosure and the purchase of the property at less than the face value of the mortgage debt, and stipulated that the capital of the new firm should not be thereby diminished as the property took the place of the debt as a partnership asset. It would seem that after the foreclosure and probably after the extension of the firm, the suits brought by Montilla in the local courts, to which we have previously referred, were decided against him, but in December, 1902, a new suit in the Porto Rican courts was by him

commenced against Van Syckel individually and the firm of Van Syckel & Company and its members to rescind the lease and to vacate the foreclosure proceedings, and to recover the Santa Cruz property. Speaking generally, as to the lease, the ground of attack was that it was void for uncertainty, that the notarial declaration of Van Syckel as to the six year term was unilateral and created no obligation and that his reservation of future right to fix terms at his will was purely protestative and void for uncertainty. As to the mortgage debt, the assertion was that the transfer by which Van Syckel had acquired it, consequent on the decree of the Provisional Court, had extinguished the mortgage by payment, as no subrogation was expressed in the transfer or could by operation of law have resulted therefrom. In the meanwhile and before the extension of the partnership, Van Syckel removed from Porto Rico with his family to reside in Cuba, but left a power of attorney with his partners to carry on the business of the firm, he returning at intervals to Porto Rico to supervise and participate in the business. Subsequently in leasing a portion of the Santa Cruz property, the lease was made to conform to the state of the public records and therefore was so drawn as to pass not only the rights of the firm, but the right of Van Syckel under his apparently existing lease. In 1905, in conjunction with one English, the firm of Van Syckel & Company formed an agricultural partnership called the Santa Cruz Sugar Company, for the purpose of developing the sugar industry on the Santa Cruz property and in that contract also the parties so acted as to make their agreement conform to the public records; that is, so as to recognize the lease apparently existing in the name of Van Syckel, as also the rights of the partnership in and to the property.

During the interval, the suit last referred to, brought by Montilla was decided against him in the lower court, and on his appeal in March, 1905, the judgment of the lower

court was affirmed by the Supreme Court of Porto Rico,
Montilla prosecuting an appeal to this court, but shortly
thereafter the appeal was dismissed because of a com-
promise effected with Montilla by which the firm of Van
Syckel & Company paid a small sum in cash, thus ter-
minating the long controversy. Shortly prior, however, to
this being done, Van Syckel died in Cuba and the partner-
ship having terminated not only as the result of his death,
but by lapse of time, a controversy concerning the lease
supervened and this suit followed.

Dealing with the facts which we have recited and the
other proof before it, the court found that the sale made
by Van Syckel to the firm of Sobrinos de Ezquiaga con-
sisted of one-half the plant and assets of a dairy establish-
ment and cattle farm by him carried on in part at least
on the leased property and that not only as the result of
implications necessarily arising from the provisions of the
articles of partnership, but from the proof as to the situa-
tion of the parties and the manner in which they gave
effect to the articles of partnership, it clearly resulted that
the lease passed to the firm as a part and parcel of the
contract by which the firm became the holder of the assets
and plant.

Thus the court said:

"It is our opinion that Mr. Van Syckel sold a full half
interest in his dairy business and all that constituted it,
which included every right he had to all property con-
cerned for 15,000 pesos to respondents Sobrinos de Ez-
quiaga."

And again, speaking on the same subject:

"We fail to see the force of the claim that Van Syckel
put in a mere credit or mortgage debt, as an asset of this
firm, the business of which was to carry on a dairy, and
it looks ridiculous to say that these respondents simply
invested in half of an interest-bearing mortgage. Van
Syckel himself had been using this ranch for some time

previous, for this same purpose as a dairy ranch and the firm continued to use it for the same purpose for some time thereafter. The firm could not ordinarily promote a dairy business by simply owning a mortgage which might be paid off any moment, so it seems to us to be plain that Van Syckel intended to include the possession which included the lease in the assets of the firm."

And this conclusion as to the ownership of the lease by the firm as the result of the formation of the partnership was reinforced by the following statements as to the conduct of the partners, their knowledge of the business, their participation therein, the accounts rendered concerning the same and the profits distributed. The court said:

"There is not a word of evidence in the case which shows that P. Van Syckel & Company ever paid any rent to Paul Van Syckel for this lease, or have ever given him any credit for any such rent or that Van Syckel ever asked the firm to so give him credit for any rent, although it is in evidence that Sobrinos de Ezquiaga sent Van Syckel numerous statements of their accounts of the firm's business while he was then living in Cuba."

And again:

"The overwhelming weight of the evidence in the case, shows that Paul Van Syckel was just as prominent and even a much more active party than Sobrinos de Ezquiaga was in all defense against, or attacks upon Montilla. A reading of the correspondence that is in evidence will convince any one of this."

Indeed, the conclusive effect of the comprehensive findings of the court concerning the ownership by the partnership of the alleged lease is fully illustrated by finding XIV, a portion of which we quote, and finding XVII.

## "XIV.

"The said Paul Van Syckel during his lifetime agreed with Sobrinos de Ezquiaga by the terms of his partnership

in the firm of P. Van Syckel & Company and otherwise that said firm of P. Van Syckel & Company should be the sole and exclusive owners of the said farm 'Santa Cruz,' free and clear of any claims upon the part of said Paul Van Syckel by reason of said lease of June 23, 1897. . . ."

## "XVII.

"The evidence in this case is clear, unequivocal and convincing that this lease of June 23, 1897, was to have no life or effect as between the parties in their accounting during or after the date of the partnership, but that the same was merged in the fee at the time of the adjudication thereof to said partnership of P. Van Syckel & Company, if not before."

Absolutely demonstrating, as these findings do, the want of merit in the contention that there was error in holding that the lease had no existence, if there was power to make and give effect to the finding, we come to consider those questions which at the outset we pointed out, are the only issues in the case.

Passing whether the face of the notarial acts to which we have referred do not in and of themselves fully establish the transfer of the lease by Van Syckel to the firm and its extinguishment by confusion as the result of the purchase at the foreclosure sale, but without intimating any opinion whatever to the contrary, let us consider the subject in a somewhat narrower aspect.

Undoubtedly, under the local law (Laws of Porto Rico, 1905, p. 70), if there was intrinsic ambiguity, the right to resort to extraneous proof to dispel it obtained; that is proof, to use the words of § 28 of the statute, showing "the circumstances under which it (the document or contract) was made, including the situation of the subject of the instrument, and of the parties to it . . . so that the judge be placed in the position of those whose language he is to interpret."

Was there then such ambiguity in the articles of partnership concerning the method of carrying on the business for which the partnership was organized as to justify the admission of explanatory proof?

The articles leave no doubt concerning what the business of the partnership was to be, that is, the carrying on of a dairy and the purchase of cattle; but there is nothing in the articles which expressly shows where and how the proposed business of the firm was to be conducted, and when light on this subject is sought from the implications of the text, to say the least, such a state of mental uncertainty is engendered as plainly justifies the resort to proof to clear up the ambiguity. We say this because in the first place the property, one-half of which was bought from Van Syckel by Sobrinos de Ezquiaga and the whole of which was then put by the joint owners into the firm as its sole capital in trade, on the face of the paper appeared to be an inventory of the assets and property of a preexisting business, which, from the nature and character of a large part of the tangible property sold, was a dairy and cattle business. In the second place because included in the articles bought was a sum of money stated to be "value of working capital" which so persuasively suggests the present purpose to continue an existing business as beyond all doubt to justify proof as to the situation of the parties and of the subject-matter to which the contract related. The proof then being admissible and establishing that Van Syckel was engaged in a dairy and cattle business upon the Santa Cruz property and that the assets and capital, one-half of which he sold, constituted the plant and assets of such business, which the firm continued to conduct, the question is, Was there such ambiguity in the contract as to the transfer of the lease as to again justify proof beyond the terms of the instrument to clear up that situation? Of this also we think there can be no doubt, for the following reason: The inclusion among the

transferred assets of the debt secured by mortgage upon the Santa Cruz property and the dominancy of that debt as to the lease, in and of itself creates obscurity as to whether, by the transfer of the paramount right, it was not contemplated to also pass to the firm the subordinate lease right, and that ambiguity becomes more apparent when it is considered that the established business was carried on by means of the Santa Cruz property and that possession of that property was necessarily a prerequisite to the continued conduct of the business. Indeed, this ambiguity becomes all the more marked when it is borne in mind that the interdependence of the lease and the mortgage was so great that the judicial power had compelled a transfer to Van Syckel of the mortgage because he was the owner of the lease. Certainly, as the possession of the Santa Cruz property for the purpose of the business was essential and that possession could only be enjoyed by the firm as a consequence of the right to the lease or the rights to be possibly acquired as the result of the foreclosure of the mortgage, the inquiry as to whether one or both rights were intended to be embraced was essential to a comprehension of the contract, and its solution was made so ambiguous by particular provisions of the contract as to justify proof for its clarification. This arises from the provision requiring the transfer of the mortgage to a third person by legal subrogation in the event Montilla should so exact. The resulting ambiguity is apparent since in such event, unless the mortgage was subordinated by agreement or by operation of law to the lease, the destruction or impairment of the rights, which it was the obvious intention of the partnership to create, becomes self-evident. So also unless the firm owned the lease it would have no interest to subordinate the mortgage to the lease and in the event the right of legal subrogation was exercised and the mortgage, by operation of law, passed to a third person, such person, unless the partnership

owned the lease, would hold the mortgage as paramount to the lease and therefore have the power to destroy it. Indeed the duty to admit the proof, we think, would equally result if attention be not confined to the articles of partnership but be extended to those articles in conjunction with "the postponement agreement," the foreclosure sale, the extension of the partnership and the other notarial documents to which we have referred. But we do not deem it necessary to elaborate this view, as what we have said is adequate to demonstrate the want of merit in the contention that the controlling findings of fact made by the court below were as a matter of law void because of a want of power in the court to consider the proof upon which the findings were based.

This leaves only for consideration the contention that the action of the court was erroneous because it gave effect to fraud and deceit, and enabled the defendants to recover by alleging their own turpitude. Before we approach that subject, however, we dispose of another matter to which considerable attention was devoted in the argument at bar.

During the course of the trial Señor Vacuna, who had been the attorney of Sobrinos de Ezquiaga, of Van Syckel and of the partnership, was offered as a witness to prove that "the postponement agreement" was advised by him and was executed as a mere precautionary measure to protect the interest of the firm in the lease, that is, to preserve the lease in case, by an adverse decision in the Montilla suits, the foreclosure proceedings were annulled and the firm deprived of its resulting ownership of the property. In other words, that the purpose was to leave the lease in such a position upon the public records that if it should result from the Montilla suits that the title resting upon the foreclosure was destroyed the lease would not be treated as having been extinguished by confusion because on the records the ownership of the property and

the ownership of the lease had been in one and the same person. The court heard the witness over objection based upon the privileged character of the matter sought to be proved, and the form in which it was attempted to be elicited. But we do not think we need consider the subject because we are clearly of opinion, in view of the findings of the court concerning the sale of the lease to the partnership and its other findings of fact, that it is wholly immaterial to pass upon the objection because even if it be assumed for argument's sake to have been well taken, prejudicial error under the circumstances did not result. The weight of the contention as to deceit, fraud and wrong-doing is placed upon the postponement agreement, but in view of the ownership by the partnership of the lease and the fact that Van Syckel, although he had disposed of the lease, still remained upon the public records as its owner, we fail to perceive the slightest foundation for the contention as to fraud or wrong or deceit, resulting from the postponement agreement as applied to those who were parties to it. As the holder of both the lease and the mortgage, the firm had the right to seek to prevent the destruction of the one right by the enforcement of the other, a destruction which would have been threatened by a resort to foreclosure if the agreement to postpone the mortgage to the lease had not been put upon the records. This is obvious for this reason: If upon the records, the mortgage had continued to occupy a dominant position as to the lease, it would have resulted that the lease would have been extinguished by a sale to foreclose the mortgage and therefore if at such a sale, a third person had bought the mortgaged property, such purchaser would have taken the property free from the lease and the firm by the act of enforcing its mortgage would necessarily have extinguished its lease. Under these circumstances there is no ground for charging fraud and wrong-doing, simply because the parties sought in a lawful mode to protect their legal rights.

In its last analysis the whole argument rests upon the assumption that because the parties to the contracts did not change the public records so as to cause them to conform to their contracts, they lost the right as between themselves to enforce their contract obligations, a proposition which is refuted by its mere statement. Looking at all the transactions from first to last,—the silence of the articles of partnership as to the lease, the act of postponement, the foreclosure proceedings, the extension of the partnership and the subsequent dealings, we can discover no ground by which it can be justly said that the parties were guilty of wrongdoing. The existence of the Montilla suits assailing the title to the property as well as the validity of the lease suffices to explain the constant purpose to retain on the public records divergent ownership of the two—when in fact they were united in one person—lest the loss of one, the title, might carry with it by confusion the loss of the other, the lease, because both had been on the record in the name of the same person. Admitting that if the title had been vacated, the benignity of the law by the application of the principle of *restitutio in integrum* would have prevented the loss of the lease by confusion and therefore the fear of the partners was unnecessary, that fact does not justify treating them as wrongdoers or characterizing their acts as fraudulent.

Indeed, when it is considered that the controversy is between partners and concerns acts in which they all bore an equal part, and that the charge of fraud is advanced to sustain the asserted right of one partner to recover, to the detriment of the other partners, property which he sold to the partnership and for which he was paid without a return of the price, the want of merit in the contention becomes apparent.

*Affirmed.*