NEW YORK SASH AND DOOR CO, INC., PLAINTIFF-APPEL-
LANT, v. NATIONAL HOUSE AND FARMS ASSOCIATION,
INC., DEFENDANT-RESPONDENT.

Argued October 21, 1943—Decided April 13, 1944.

For the appellant, *William N. Gurtman* (*Aaron Z. Schomer*, of counsel).

For the respondent, *Atwood C. Wolf*.

The opinion of the court was delivered by

HEHER, J.  Plaintiff appeals from a judgment entered on a jury verdict for defendant on the complaint.  The verdict was in favor of plaintiff on defendant's counter-claim, but there is no appeal from the judgment thereon.

The complaint pleaded a contract in writing whereby defendant agreed to sell to plaintiff unused lumber and miscellaneous building materials which it had on hand, itemized

as to character and quantity in a schedule thereto annexed, for the price of $29,000; that, although the purchase price had been paid in full, defendant had refused to deliver certain materials thus sold of the value of $8,249.84; and that defendant is entitled to credit for $2,241.62, representing the value of materials delivered to plaintiff "in excess of the quantity called for under the contract." Judgment for the difference is sought.

The answer and counter-claim averred that "the parties arrived at the basic consideration price of $29,000 through error and mistake in mathematical calculation and computation, in that there was assigned, by erroneous multiplication, incorrect prices to a large number of items of rough lumber which formed a large part of the materials comprehended by and embraced by said agreement;" that, as a result of this mistake, the total price was "erroneously calculated at $35,172.91, whereas it should have been calculated at $48.741.64, or as to the rough lumber it was erroneously computed at $1,513.84, whereas it should have been computed at the correct figure of $15,082.57;" that plaintiff accepted defendant's offer "with full knowledge of said mistake," and plaintiff therefore "cannot recover on the contract;" that the total value of the materials "removed" by plaintiff, at the unit prices, was $48,741.64, and that plaintiff thereby became indebted to it for that amount, less the discount of 17½%, or the net sum of $40,211.85, on account of which $29,000 had been paid, leaving the balance due $11,211.85, and that, in addition, plaintiff is indebted to defendant for materials sold to it, but not removed, in the amount of $3,074.82, or a total sum of $14,286.67. There was also a count for deceit, based upon plaintiff's asserted knowledge of the error.

In the schedule, the price of certain rough lumber was stated to be "$55.00 M." Evidence was adduced, indeed it was not denied, that this meant $55 per thousand board feet, but the calculation made by defendant was on the basis of $55 per thousand pieces or units, making the extended total $1.513.84 instead of $15,082.57.

Concededly, this error of computation was defendant's, uninduced by plaintiff. And we find no substantial basis in

the proofs for the conclusion that plaintiff was aware of the miscalculation until defendant refused to complete delivery of the materials sold, after it had paid in full the stated price of $29,000. The learned trial judge so found on plaintiff's motion to direct a verdict in its favor on the complaint and to nonsuit defendant on the counter-claim. In sum, the contention is that the materials were in fact sold at the unit prices stated in the schedule rather than the lump sum price set in the contract itself, and therefore the unit prices should control.

At the trial, however, defendant took the position that "there is no contract because there was a mistake in a material representation upon which the parties acted;" yet it asked for judgment on the counter-claim on the assumption of a binding contract of sale at the unit prices set forth in the schedule. But the trial judge submitted to the jury the basic question of the terms of the contract. The jury were instructed thus: "You have to determine, first, was this a sale for a lump sum?"—or was it "in fact a unit price sale?" Again, he charged: "Of course, if you find that neither party has sustained the burden cast upon it to prove its case, then you would return a verdict of no cause of action, both on the main case and on the counter-claim." Evidence was received on the hypothesis, to use the language of the trial judge, that "oral testimony is admissible where there is an ambiguity apparent on the face of the agreement."

These rulings are all assigned for error; likewise, the denial of plaintiff's motion for a directed verdict. The assignments are well founded.

By the clear and explicit terms of the writing, plaintiff covenanted to pay the sum of $29,000 for "the building materials set forth in" the schedule, not the price calculated by the application of the unit rates contained therein; and its undertaking cannot on well settled principles be enlarged by parol evidence of a different agreement. There is no promise in the schedule itself to pay the unit prices; nor are the extended figures totaled therein. The schedule merely served the limited purposes outlined in the contract proper. True, the contract embodies stipulations that shortages and extra quantities taken of the "individual items of

material as set forth" in the schedule should be deducted or added, as the case might be, to "the purchase price of $29,000, * * * computed on the value of each such item as set forth under the column Unit Price less 17½% thereof."

But these provisions do not serve to augment the definitely expressed obligation undertaken by plaintiff. The standard prescribed for price adjustment to cover shortages and extras cannot be utilized to override the provision fixing a specific purchase price for the subject-matter of the sale. The parties were at liberty so to stipulate; and the courts have not the faculty of making a new contract for them. By the expression, plaintiff agreed to pay but $29,000 for the material; and it cannot now be called upon at law to pay more than one-third as much again. It may well be that, if plaintiff knew the latter was the price, it would not have made the purchase. If the contract does not express the common intention, it is reformable in equity only.

There is no occasion to determine whether there was here a mutual or a unilateral mistake, or the legal consequence of either. Suffice it to say, in this regard, that the contract has been performed in substantial part, and that it is the general rule that a unilateral material mistake of fact, unknown to the other party, is not ordinarily ground for avoidance or rescission. The rule has its exceptions grounded in exceptional circumstances. There is a contrariety of view as to whether the principle governs where the mistake is due to an erroneous mathematical computation. *Moffett, Hodgkins & Clarke Co.* v. *Rochester,* 178 *U. S.* 373; 20 *S. Ct.* 957; 44 *L. Ed.* 1108; *Steinmeyer* v. *Schroeppel,* 226 *Ill.* 9; 80 *N. E. Rep.* 564; *Geremia* v. *Boyarsky,* 107 *Conn.* 387; 140 *Atl. Rep.* 749; 17 *C. J. S.* 495; 12 *Am. Jur.* 624. Nor is it pertinent to inquire whether plaintiff is chargeable with knowledge of the mistake, actual or constructive. As stated, the jury were directed to ascertain the terms of the contract, aided by the extraneous evidence of intention.

It is fundamental that where, as here, the parties have made a memorial of their bargain, their actual intent unless expressed in some way in the writing is ineffective, except through the medium of a reformation of the writing. While the intention of the parties is sought, it can be found only in

their expression in the writing. In effect, it is not the real intent but the intent expressed or apparent in the writing that controls. The obligation of a contractor depends upon his expressed rather than his actual intention. The writing is the exclusive repository of the common intention. In the absence of reformation, the parties are bound by the language employed to state the agreement. *Corn Exchange National Bank and Trust Co.* v. *Taubel,* 113 *N. J. L.* 605. And the construction of the integration is the exclusive function of the judge, unless an issue of fact is raised by evidence *aliunde.* Where the meaning of an integrated contract is uncertain or ambiguous, the surrounding circumstances, standards and usages may be introduced for the purpose of elucidation; and the meaning of the writing then becomes a question for the jury only if in the circumstances it is reasonably the subject of divergent inferences. *Edge* v. *Boardwalk Securities Corp.,* 115 *Id.* 286. Parol evidence is admissible to show that the words of the contract had a special local meaning. *Williston on Contract (Rev. ed.),* §§ 616, 629. Extrinsic evidence is not admissible for the purpose of modifying, enlarging or curtailing the terms of the writing, but only to aid in the ascertainment of their meaning. Such an inquiry is not for the purpose of changing the writing, but to secure light by which to determine its actual significance. So far as the evidence tends to show, not the meaning of the writing, but an intention wholly unexpressed therein, it is irrelevant. *Corn Exchange Bank and Trust Co.* v. *Taubel, supra.* In the *Restatement of the Law of Contracts,* it is said that if the accompanying circumstances indicate "an intent at variance with any meaning that can be attached to the words of the [integrated] contract, even when the words are looked at in the setting in which they were used, that intent can be given no effect unless the facts justify reformation of the contract. Yet, as all language will bear some different meanings, evidence of surroundings is always admissible. Its operative effect depends on how far the words will stretch, and how alien from the ordinary meaning of the words is the intent they are asked to include." 1 *A. L I. Contracts* 324, § 235.

In the application of extrinsic aids to interpretation, care

must be exercised against infringement of the substantive rule barring parol evidence to vary or contradict the terms of an integrated contract. Parol evidence is admissible to clarify an ambiguity in the writing, but not to add to or detract from its terms. An explicit statement of the parties' engagements cannot be varied by parol. Where obscure, the terms may be explained but never altered except by reformation.

Here, the language of the integration is clear and unambiguous. Plaintiff undertook to pay $29,000 for the subject-matter of the sale; and now to enlarge that obligation to $40,211.85 would do violence to the plain letter of the contract. While the meaning of language is essentially a question of fact, the terms of this writing are so clear as to preclude doubt of their meaning by a reasonable man; and it was therefore incumbent upon the court to decide this question of fact for itself. *Edge* v. *Boardwalk Securities Co., supra.* What the trial judge did was to authorize the jury to reform the integration, and thus to award a purely equitable remedy that is governed by established principles and is not available to rectify every mistake.

Since the issues raised by the complaint and counter-claim are intertwined, the ends of justice will not be served unless the judgment on the counter-claim be also reversed, notwithstanding that no appeal has been taken therefrom. There is pending a bill in equity interposed by the defendant for reformation of the contract; and therefore the entire judgment should be reversed to the end that the whole controversy may be determined in accordance with law, either in Chancery or at law after the reformation proceedings have terminated in a final decree.

The judgment is accordingly reversed *in toto,* and a *venire de novo* is awarded; costs to abide the event.

*For affirmance*—DONGES, PERSKIE, RAFFERTY, THOMPSON, JJ. 4.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, PARKER, CASE, BODINE, HEHER, PORTER, COLIE, WELLS, DILL, JJ. 10.