CORBETT ENGLAND *v.* UNIVERSAL FINANCE CO., INC., ET AL.

[No. 121, October Term, 1945.]

*Decided May 15, 1946.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, and HENDERSON, JJ.

*Edward Pierson,* with whom was *Leon H. Pierson* on the brief, for the appellant.

*Theodore R. Dankmeyer,* with whom were *Niles, Barton, Morrow & Yost* and *Edward M. Seidl* on the brief, for the appellees.

GRASON, J., delivered the opinion of the Court.

Corbett England, appellant, filed his bill of complaint against Universal Finance Company, Inc. (herein referred to as Universal), and Reliable Motors Company, Inc. (herein referred to as Reliable), appellees, in the Circuit Court of Baltimore City, in which he prayed: (a) That a release dated June 4, 1945, from the appellant to appellees, may be set aside. (b) That the said release be reformed so as to apply only to the refunding of the difference between the purchase price of an automobile and the O. P. A. ceiling price of $800. (c) And for general relief. The facts alleged in the bill of complaint, stated in narrative form, are as follows: On March 22, 1945, England purchased from Reliable, a Studebaker sedan, which was sold to him as a 1941 model, at the price of $1,012, and he paid on account thereof $402 in cash and the balance was financed for him by Reliable through Universal, which was affiliated with Reliable. Thereafter, England discovered that the automobile was listed as a 1940 model and that the O. P. A. ceiling price thereon was $800. He made claim on Reliable for a refund of the difference between the 1940 O. P. A. ceiling price of $800 and the amount charged him, of $1,012, and on June 4, 1945, Reliable paid him the sum of $212 to adjust the difference between the purchase price of the automobile and the 1940 ceiling price. Upon payment to him by Reliable of $212 for the purpose of refunding to England the excess price charged him, and for no other purpose, the appellees required him to sign a release, a copy of which is exhibited with the bill, which is a general release and bars all further claims by England against appellees.

At the time England received the sum of $212 and signed the release, he was not aware of the fact that the automobile in question was a stolen car. He is advised and believes, and therefore avers, that the said automobile was stolen on April 25, 1941, from the Miami Motors, Inc., of Miami, Florida, and that the said automobile was on or about June 14, 1945, seized by the State of Maryland, Department of Motor Vehicles, as a stolen car. It is charged in the bill that appellees intend to interpose the release as a full defense to any action by England to recover from them the money paid on account of the purchase price of said automobile, and unless the court will intervene and set aside the alleged release he will be unable to maintain a suit at law for the recovery of the money paid by him on account of the purchase price of the automobile, and other damages which he has suffered. He asserts that he has no adequate remedy at law.

The release in question is in writing, dated June 4, 1945, and signed by England. By it England acknowledged receipt of the sum of $212 in cash from Universal and Reliable. It recites this sum represents full settlement of all claims which "I now have, may have had or will have with regard to the purchase of one 1941 Studebaker Sedan," giving the engine and serial numbers. It further provides: "This settlement is being made because the automobile has a 1940 Motor, and for the purposes of this settlement the Universal Finance Company, Inc., and Reliable Motors Company are refunding to me the difference in the ceiling price between the 1940 Model Studebaker and the 1941 Model Studebaker. Nothing in this settlement shall be construed as an admission or prejudice of any rights which the aforesaid Universal Finance Company, Inc., and/or the Reliable Motors Company shall have or have as to the year model of the automobile or any other fact pertaining to this matter."

Appellees demurred to the bill and the chancellor below, by his decree, ruled that England has a full and complete remedy at law and dismissed the bill of complaint without leave to amend. England appeals to this court.

The facts alleged in the bill must, upon demurrer, be taken as true. We might say, in passing, that there is no direct charge made in the bill that the vendor of the automobile, at the time of sale to the vendee, knew it was a stolen car, and the allegations in the bill will not support an inference that the vendor knew that the car was stolen. We have, therefore, a case where a vendor sold to a vendee an automobile, thinking that it had legal title thereto, that was, in fact, stolen, and it could not pass a good title to the vendee. The price charged by the vendor was $212 in excess of the price set by the O. P. A. This excess was paid by the vendee to the vendor at the time of sale, and upon discovery of this fact the vendee called upon the vendor to refund this excess. This was done, and at the same time the release in question was executed by the vendee to appellees. A few days thereafter the car was seized from the vendee by the State officials as a stolen car. The vendor, upon being informed of the fact that the car had been seized and taken from the vendee as a stolen car, took the position that the release in question was broad enough to prevent recovery by the vendee from the vendor of the money paid on account of the purchase of this car.

None of the parties to this transaction knew that the car was, in fact, a stolen car. The vendor honestly represented to the vendee that he had title to the car, and this representation was not in any way the result of fraud or deceit. The vendor, in making this representation, made an honest mistake.

If the vendee sued at law for the money paid on account of this automobile to the vendor, he would be met by a plea setting up a general release by the vendee to the vendor. A replication to such a plea that it resulted from an honest mistake, would be bad in law and demurrable, inasmuch as the vendee could not aver in a replication that the release was obtained through fraud and deceit, or traverse the same as not genuine.

"The release referred to is, of course, a technical release under seal, and none other will be admissible. Un-

less impeached for fraud or duress, or traversed as not genuine, the defense will be complete; and the plaintiff will not be heard to allege or allowed to prove that it was without sufficient consideration, or that the amount paid was, in reality, not all that was due." *Poe, Pleading and Practice* (Tiffany's Ed.), Vol. 1, Sec. 653; *Western Maryland Dairy Corp. v. Brown,* 169 Md. 257, at page 262, 181 A. 468.

A court of law has not the power to reform a written instrument executed by reason of a mistake. *Boyce v. Wilson,* 32 Md. 122. And parol evidence is not admissible in actions at law to vary or contradict the terms of a written instrument. *Markoff v. Kreiner,* 180 Md. 150, 23 A. 2d 19.

It would have been futile, therefore, for the appellant to have instituted an action at law against appellees for the money he paid on account of the purchase price of this automobile, and it cannot be successfully maintained that he had a full, complete and adequate remedy at law. It is one of the familiar powers of a court of equity to correct a mutual mistake contained in a written instrument. It would be unconscionable to enforce such an instrument when one of the parties thereto would be enriched, and the other party subjected to irreparable damage because of a mutual mistake. A court of conscience will prevent this injustice and an equity court has full and complete jurisdiction to reform the instrument so that it will evidence the real intention of the parties thereto. This is so even though the instrument is within the Statute of Frauds. *Markoff v. Kreiner, supra; Hoffman v. Chapman,* 182 Md. 208, at page 210, 34 A. 2d 438; *Ben Franklin Ins. Co. v. Gillett,* 54 Md. 212; *Delaware State F. & M. Ins. Co. v. Gillett,* 54 Md. 219; *Bitting v. Home Ins. Co.,* 161 Md. 56, at pages 64, 65, 155 A. 329.

In the case of *Hoffman v. Chapman, supra,* Judge Delaplaine quoted 1 *Story Equity Jurisprudence* (12th Ed.), Secs. 155, 156, as follows [182 Md. 210, 34 A. 2d 440]:

" 'A court of equity would be of little value,' Justice Story said, 'if it could suppress only positive frauds, and

leave mutual mistakes, innocently made, to work intolerable mischiefs contrary to the intention of parties. It would be to allow an act, originating in innocence, to operate ultimately as a fraud by enabling the party, who receives the benefit of the mistake, to resist the claims of justice under the shelter of a rule framed to promote it. * * * We must, therefore, treat the cases in which equity affords relief, and allows parol evidence to vary and reform written contracts and instruments, upon the ground of accident and mistake, as properly forming, like cases of fraud, exceptions to the general rule which excludes parol evidence, and as standing upon the same policy as the rule itself'."

It is, therefore, beyond question that a court of equity has jurisdiction to correct a written instrument so as to express the true intention of the parties thereto when by reason of a mistake the instrument does not express the intention of the parties. A court of law does not possess this power.

We must keep in mind that at the time of the execution of the release in question none of the parties to it knew that the car involved in this case was a stolen car. The only thing known by the parties at the time, that could have been the subject of a release, was the overcharge, in ceiling price, of $212. The question is, will the release be so limited and confined? In *Vincent v. Palmer*, 179 Md. 365, at page 375, 19 A. 2d 183, this court said:

"However, it is generally accepted that a release, though general in terms, will be reformed so as to cover merely the right with respect to which the parties were actually dealing. 5 *Williston on Contracts*, Sec. 1551. If both parties have an identical intention as to the terms to be embodied in a release, and the writing executed by them is materially at variance with that intention, either party can have the writing reformed so that it will express the intention of the parties. Likewise, if one party at the time of the execution of a release knows that it does not accurately express the intention of the other party,

and also knows what that intention is, the latter can have the release reformed so that it will express that intention. 2 *Restatement of Contracts,* Secs. 504, 505."

In *Miller v. Perlroth,* 95 Conn. 79, 110 A. 535, at page 537, the court said:

"It is quite true that the rights of a releasor of which he was ignorant are not released by general words annexed to a release of another and different claim. The reason is that a real, as well as a verbal, assent by the releasor is necessary. In such cases the assent to a general settlement and discharge is manifested, but that assent is satisfied by the discharge of all claims and demands then known to exist. 34 *Cyc.* 1902; 3 *R. C. L.* 387."

See 45 *Am. Jur.* par. 30, page 694; 23 *R. C. L.,* par 39, page 409.

In *McKeever v. Washington Heights Realty Corp.,* 183 Md. 216, at pages 223, 224, 37 A. 2d 305, at page 310, this court said:

"But the Chancellor should have assumed jurisdiction, not only to grant the injunction, but also to award appellants any compensation to which they are entitled. Under a prayer for general relief, the court is not confined to the relief which is specifically prayed for, but may grant any needed relief which is not inconsistent with the special prayers. * * * It is an established rule that when a court of equity has once rightfully assumed jurisdiction, it will retain its jurisdiction in order to settle all questions that might arise out of the subject in controversy and give the complainants complete relief, even in those respects in which it would not have had jurisdiction originally, thereby preventing a number of conflicting proceedings concerning the same subject. *Keighler v. Ward,* 8 Md. 254, 266; *Reed & Fibre Products Corporation v. Rosenthal,* 153 Md. 501, 521, 138 A. 665."

See *Nagel v. Todd,* 185, Md. 512, 45 A. 2d 326.

We hold: (1) That the appellant has not an adequate remedy at law; (2) that the bill in this case states a cause for equitable relief; (3) that equity has full and complete jurisdiction to reform the release referred to, and if upon proof, the allegations of the bill are sustained, the court

should reform the release; (4) that equity having jurisdiction for the purpose of reforming the release, its jurisdiction is full and adequate to determine fully the rights of the parties in this proceeding. For reasons above given, the decree of the chancellor below is reversed.

*Decree reversed; with cost to appellant, and cause remanded for further proceedings.*