## EGRY REGISTER CO. v. NATIONAL TOOL & MFG. CO.
### Civil Action No. 3367.

District Court, D. New Jersey.
June 23, 1947.

Reid, Kelly, & Flaherty, of Newark, N. J. (Reynier J. Wortendyke, of Newark, N. J., of counsel), for plaintiff.

Stein, Stein & Hughes, by Richard V. Stein, all of Elizabeth, N. J., for defendant.

MEANEY, District Judge.

This is an action upon a contract for the price of certain merchandise manufactured by plaintiff for defendant.

Plaintiff, the Egry Register Company, is a corporation of the State of Ohio, engaged in the manufacture and sale, among other things, of commercial stationery, business machines and supplies. The defendant, National Tool and Manufacturing Company, is a New Jersey Corporation. The amount in controversy exceeds the statutory requisite necessary to invoke this court's jurisdiction.

The cause of action arises out of a dispute between the parties as to the terms and conditions under which plaintiff manufactured for the defendant what are referred to as job labor cards. Plaintiff bases its claim on an alleged contract, under the terms of which it is contended that the defendant agreed to purchase 231,500 job labor cards for the agreed basic price of $7.04 per thousand and an additional charge of $23.59 for each "change" which the defendant might require and direct.

Plaintiff claims additionally that it was compelled, at the request and direction of the defendant, to make 462 such "changes" as a result of which a bill in the total amount of $12,524.82 was rendered, but which defendant has refused to pay.

The defendant, while admitting the order for the cards at the basic price of $7.04 per thousand as contended by the plaintiff, vigorously denies that the sum of $23.59 was to be paid for each of 462 so-called changes. On the contrary, defendant insists that there were to be 462 imprints on the forms, printed at seven different places at the cost of $23.59 for each of the seven, making a total of $1,794.89.

The preliminary negotiations between the parties, culminating in the placing of the order under the now disputed contract, were entered into in June of 1943 between Richard F. Pratt, as managing sales agent of the plaintiff company, and Fred F. Rogers, Jr., a salesman for the Egry Register Company, and E. G. Leonard, the then purchasing agent for defendant, and Leon Lubkin, as chief cost accountant for the defendant company.

In the course of the discussions that followed, the representatives of the plaintiff company were taken through the defendant's plant or shop, where they were shown the working "set-up" and the use to which the "job" cards were to be put in the manufacture of machine gun parts. Suggestions were made by plaintiff's agents as to improvements that might be made in the printing, which ultimately appeared in the finished printed form. Discussions and suggestions for the card set-ups were continued over a protracted period with frequent personal meetings between the various parties.

As they were finally developed and agreed upon, the job labor cards were of uniform design, the greater portion of the substance being the same. In addition, individual portions of each group of 500 cards were to be imprinted with various job numbers and classifications as the defendant directed and required. The job classifications and numbers, referred to by plaintiff as "changes" in the otherwise uniform design, constituted 462 in all, appearing in assorted combinations at seven different places on each card. The list of the 462 changes was sent to the plaintiff by the defendant when it had determined the required designations.

As finally agreed upon, the cards were in triplicate, containing carbon inserts. They were of uniform design over the greater portion, with each group of 500 having a variation of the changes imprinted at seven different places.

When the final form had been determined and the list of changes submitted, Pratt, acting for the plaintiff, wrote a letter to the defendant under date of August 16, 1943, setting forth the terms and conditions under which the plaintiff would undertake the printing contract.

Since the court deems that letter and the response thereto, under date of August 23, 1943, controlling, both will be set forth in full:

"The Egry Register Company, Dayton, Ohio.

"Newark N. J. Sales Agency
"Richard F. Pratt
"Managing Sales Agent
                    "August 16, 1943.
"National Tool & Manufacturing Co.
    "Kennilworth, New Jersey.
        "Attention of Mr. E. Leonard.
"Gentlemen:

"This will confirm our conversation at which time you requested us to send you an analysis of the order received from your organization for your Job Labor Cards.

"This order now calls for 231½ thousand Job Labor Cards, three parts interleaved with one-time carbon @ $7.04 per thousand. *We also received a list of changes which we are to print seven different places on each form. These changes are to be billed at $23.59 each.* (Italics ours.)

"We have sent this order into our factory with the request that immediate action be given to it as we know that this has been delayed through no fault of yours, for a considerable length of time. We therefore hope to have a proof out on it just as soon as possible, and please be assured that every attention shall be given to this order so that you receive the best possible service.

"We would appreciate your mailing us a confirmation for our records.

                "Yours very truly,
                    "The Egry Register Co.
                    "(Signed)  Richard F. Pratt
                            "Richard F. Pratt,
"RFP:DF          Managing Sales Agent."

The response, received by the plaintiff on August 26, 1943, was on a form of order or requisition then in use by the defendant, and was sent under date of August 23, 1943. In its material features, the order was as follows:

"No. 12958
"National Tool & Manufacturing Co.,
"North 12th Street, Kenilworth, N. J.

"Egry Register Systems,
"965 Broad Street,
"Newark, N. J.

> Date of Purchase Order
> 8/23/43
> Account to be Charged
> Fac.Sta.Sup.
> Purchase Requisition No.
> Cost Dept.
> Shop Order No.

231½ M Job Labor Cards—as per sample
"Colors to be specified
"In triplicate with Carbon Inserts.

> "National Tool & Mfg. Company,
> "Per E. G. Leonard"

The testimony indicated that the name E. G. Leonard appearing at the end of defendant's reply was not signed by Leonard but by a "clerk in the purchasing office" who "signed in the usual course of business," during Leonard's absence.

■ The letter of August 16, 1943, and the reply thereto clearly constitute an integrated contract, incorporating therein a a complete expression of the terms of the agreement entered into by the parties. Defendant's answer was a manifestation of assent to the terms and conditions therein contained and the parties are bound by those words even though each party may have attached a different meaning to the language used.

■ Where the parties have made a memorial of their bargains, their actual intent, unless expressed in some way in the writing, is ineffective. Their intention must be found in the writing, and it is that expression that controls. Corn Exchange National Bank & Trust Co. v. Taubel, 113 N.J.L. 605, 175 A. 55. The obligation of a contractor, therefore, depends upon his expressed rather than his actual intentions, and the writing is the exclusive repository of the common intention. In the absence of reformation, the parties are bound by the language employed to state the agreement. While parol evidence is admissible to clarify an ambiguity in a writing, it may not be so used where, as here, there is no uncertainty and the language is an explicit statement of the parties' engagements. New York Sash & Door Co., Inc., v. National House and Farms Ass'n, 131 N.J.L. 466, 36 A.2d 891.

■ In the light of these fundamental principles, the interpretation of the contract insisted upon by the defendant is untenable. The language of the agreement is clear. The terms employed are not indefinite and do not readily lend themselves to any interpretation other than their generally understood meaning.

In such case the attending circumstances, here relied upon by the defendant to support the interpretation of the contract as insisted upon by it, may not be employed to extract from the words a meaning different from their general meaning.

■ While the great variance between the parties in interpreted cost of manufacture may seemingly work a severe hardship upon the defendant, such hardship will not suffice to permit the court to read into the plain import of the words of the contract, a meaning not in accordance with the terms employed. There is patently no ambiguity in the contract as agreed upon, and the defendant is bound by the intention as it appears expressed in the writing.

The words of Pratt's letter of August 16th state specifically and explicitly that the plaintiff had received a "list of changes" which were to be printed at several different places on each form, and that "These changes are to be billed at $23.59 each."

While the interpretation given the terms of the letter differed, the parties nevertheless are bound by their expressed intention; in this case, that *each change* would be billed at a stated price. Nothing contained in the words of the letter indicate other than a single meaning. The terms are so clear as to preclude doubt of their meaning by a reasonable man.

Accordingly, judgment will be entered herein in favor of the plaintiff in the amount of $12,524.82, plus interest from October 30, 1943.