**Allen E. MOORE, Jr., Plaintiff,**

v.

**The HOME INDEMNITY COMPANY, a New York Corporation, Defendant.**

Superior Court of Delaware, New Castle.

Feb. 9, 1971.

James P. D'Angelo, Wilmington, for plaintiff.

F. Alton Tybout, Wilmington, for defendant.

QUILLEN, Judge.

This case arises from an accident which occurred on August 19, 1969. The plaintiff, who is insured by defendant, was riding in a car owned by John Coluzzi when it was struck by an auto operated by an uninsured motorist. The plaintiff has recovered $10,000 from Mr. Coluzzi's insurer under its uninsured motorist provisions. Plaintiff now seeks to recover an additional $10,000 from his own insurer under his uninsured motorist coverage.

The only question before the Court is the extent and limitations of plaintiff's uninsured motorist coverage.

It appears from the facts that when the automobile policy was issued to plaintiff it was issued without an uninsured motorist endorsement attached. The policy received by Moore does state on its face: Uninsured Motorist, Premium $6, Limits of Liability $10/20.[1] There is no further explanation of the uninsured motorist protection included in the policy. It would appear obvious to a trained observer or one familiar with insurance policies that something had been left out of this policy. However, it is not at this time obvious that

[1]. In insurance parlance, $10/20 means a maximum liability of the insurer to any one person of $10,000, and a total maximum of $20,000 for any one accident.

the insured had any knowledge that the policy was not complete if indeed it was not complete.

The insurer contends that it sells insurance under standard policies and endorsements to those policies. It has submitted a copy of its standard endorsement for uninsured motorist coverage. It is suggested that the Court should incorporate the terms of that endorsement into the insurance contract with which we are dealing. The standard endorsement as submitted to the Court would limit the insurer's liability in the event that other insurance were available to the insured. If other insurance was available, then the insurer's liability would be only the difference between the amount otherwise available and the maximum liability under this policy. In this case since the other insurance provided $10,000 and that is the maximum available under this policy, if the provision were effective, plaintiff would be entitled to receive nothing from his own insurer.

The effect of a provision such as the one relied upon by the defendant is questionable in states requiring the insurer to provide uninsured motorist protection.[2] This Court does not have to decide that question as it is the opinion of the Court that it cannot find the endorsement to be a part of the insurance contract. It has been held that failure to comply with a rider to an insurance policy, which rider was never attached to the policy or delivered to the insured, even where such rider was referred to in the main policy, cannot be asserted as a defense by the insurer. Hartford Accident & Indemnity Company v. Shaw, 273 F.2d 133 (8th Cir. 1959). See also 1 Couch on Insurance 2d § 4:24. Any additional limitations, exclusions, or exemptions to the coverage offered by the insurer would have to be spelled out clearly by him. See Nationwide Mutual Insurance Co. v. Schilansky, 176 A.2d 786, 788 (D.C. Mun.Ct.App.1961); Loffler v. Boston Insurance Co., Inc., 120 A.2d 691, 693 (D.C. Mun.Ct.App.1956); Selden v. Metropolitan Life Ins. Co., 354 Pa. 500, 47 A.2d 687 (1946).

The Court is presented with a contract which states on its face that there is uninsured motorist coverage, that the premium for that insurance is $6, and that the limits of liability are $10/20. While it is true that this is not a very specific definition of coverage and that the Court could have some difficulty determining the exact terms of the coverage, nonetheless it would not be too difficult, especially under the circumstances of this case. The term uninsured vehicle coverage is defined by statute, the premiums due are stated on the policy, limits of liability are set by the policy itself, and the claimant is the named insured. The Court can interpret the cover-

---

2. It has recently been held that a statute requiring insurers to offer uninsured motorist coverage would invalidate an "other insurance" clause such as defendant urges is available as a defense in this action. See Simpson v. State Farm Mutual Automobile Insurance Co., 318 F. Supp. 1152 (D.C.S.D.Ind.1970), and in accord are Harleysville Mutual Casualty Co. v. Blumling, 429 Pa. 389, 241 A.2d 112 (1968); Bryant v. State Farm Mutual Automobile Insurance Co., 205 Va. 897, 140 S.E.2d 817 (1965) and Sellers v. United States Fidelity and Guaranty Co., 185 So.2d 689 (Sup.Ct.Fla.1966). But *Contra* are: Travelers Indemnity Co. of Hartford Conn. v. Wells, 316 F.2d 770 (4th Cir. 1963); Maryland Casualty Co. v. Howe, 106 N.H. 422, 213 A.2d 420 (1965); Martin v. Christensen, 22 Utah 2d 415, 454 P.2d 294 (1969) and Chandler v. Government Employees Ins. Co., 342 F. 2d 420 (5th Cir. 1965). The courts holding that the statutes are incompatible with "other insurance" clauses have generally used the theory that the insured is paying for coverage made available to him by law and that to allow the insurer to avoid payment after receiving premiums would defeat the purpose of the statute. Those courts upholding the "other insurance" clauses have reasoned that the intent of the uninsured motorist statutes was to provide a certain minimum of coverage from whatever source. It would be interesting to know what law or laws of other states, if any, the Delaware draftsmen used as a model for this portion of the new insurance code.

age with the information available to it. As it now stands, the information in the policy would be a complete contract.

This case is not a case of interpretation of the terms of a contract. Rather the insurer is arguing that we should incorporate terms into the contract which do not appear on its face. As one New Jersey Court said:

> "This court is reluctant to read into a written policy, drawn by the insurance company, clauses favoring the insurance company which the insurance company could easily have stated expressly in the policy." Johnson Bros. Boat Works v. Conrad, 58 N.J.Super. 334, 156 A.2d 175, 178 (1959).

For whatever reasons, the endorsement was not attached to the policy delivered to the plaintiff. This Court has no choice but to interpret the insurance contract as it was written and delivered to plaintiff. The Court is not faced with the problem of an undelivered insurance policy. Rather, a policy has been delivered. This Court is not free to rewrite that contract according to terms which one of the parties asserts it did not insert because of some error on its part. Budner v. Haas, 33 Del.Ch. 561, 98 A.2d 509 (1953).

To include this endorsement as part of the contract between these parties would be reformation, and, in the absence of statutory provisions to the contrary, reformation is solely an equitable matter. Gallizzi v. Scavo, 406 Pa. 629, 179 A.2d 638 (1962); England v. Universal Finance Co., 186 Md. 432, 47 A.2d 389 (1946); and New York Sash & Door Co. v. National House & Farms Ass'n, 131 N.J.L. 466, 36 A.2d 891, 894 (1944); 76 C.J.S. Reformation of Instruments § 67. Courts of law are held to the stipulations of a contract, but one of the most important powers of equity is to reform contracts. Cannon v. Collins, 3 Del.Ch. 132, 152 (Ch.1867).

If defendant can meet the strict requirements for reformation, then the remedy lies in a bill for reformation rather than in this affirmative defense. Compare Massari v. Einsiedler, 6 N.J. 303, 78 A.2d 572 (1951); Camden Safe Deposit & Trust Co. v. Warren, 121 N.J.Eq. 141, 187 A. 651 (1936). The defendant's post argument memorandum suggests it will not be successful if a bill is filed in Chancery and a brief review of the Reformation of Instruments headnotes in the Atlantic Digest underscores the difficulty. But it is reformation the defendant seeks and the defendant must stand or fall on the legal principles of reformation.

For these reasons, defendant's motion for summary judgment is denied. It is so ordered.