**912**

**GEORGETOWN ASSOCIATES, et al., Plaintiffs,**

v.

**CHEROKEE INSURANCE COMPANY, et al., Defendants.**

**No. 80 C 4887.**

United States District Court,
N. D. Illinois, E. D.

Feb. 12, 1982.

Thomas P. Ward, Rooks, Pitts, Fullager & Poust, Chicago, Ill., for plaintiffs.

Paul A. Rettberg, Querrey, Harrow, Gulanick & Kennedy, Chicago, Ill., for defendant Cherokee Ins. Co.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Georgetown Associates ("Georgetown") sues Cherokee Insurance Co. ("Cherokee") and Nordstrom Agency of Illinois, Inc. ("Nordstrom"), claiming Cherokee breached its contract of insurance by refusing to pay for loss sustained when Georgetown's outdoor swimming pool unexpectedly popped out of the ground. Georgetown and Cherokee have filed cross-motions for summary judgment. Because there are material fact issues, both motions are denied.

### Facts

Georgetown is a real estate limited partnership. One of its developments is Georgetown of Willow Bend ("Willow Bend"), an apartment complex in Rolling Meadows, Illinois. Willow Bend's outdoor swimming pool is adjacent to the living units, shaped like a trapezoid (60 feet long, 40 feet wide at the shallow end narrowing to 20 feet at the deep end) and surrounded by a concrete deck.

Before April 30, 1980 substantial amounts of ground water had collected around and beneath the pool,[1] creating hydrostatic pressures whose force ultimately exceeded the weight of the pool. On April 30 the excess force caused the pool to thrust upward more than 12 inches, shattering the concrete deck, destroying the pool's plumbing connections and substantially damaging the pool.

There is a dispute as to why the water pressure had been unrelieved before the occurrence:

Georgetown presents the affidavits of experts Richard Hults and Lewis Blue. Hults, president of a local construction company who has worked in the industry for 11 years, inspected the pool shortly after the accident. He concluded that the pool's "hydrostatic gravity valve failed to release hydrostatic external ground water forces, which caused pressure to build up around the pool, and which ultimately forced the pool to rise above ground level." Blue, housing inspector for the City of Rolling Meadows, came to the same conclusion based on substantially the same observation.

---

1. Apparently the buildup of ground water was caused by heavy rainfall aggravated by the spring thaw.

Cherokee counters with the affidavit of its own expert Ruben J. Baer, a registered structural engineer. Baer too examined the swimming pool shortly after the accident. He concluded that the "uplifting . . . was caused by a loss of pool water through a crack or cracks in the pool wall or floor and that said cracks were caused either by faulty operation or maintenance of the pool and/or as a result of poor design of the pool itself."

Baer's conclusion is thus directly at odds with that of Hults and Blue. Both of them chalk up the accident to failure of a valve to relieve pressure caused by unfavorable weather. Baer rather ascribes the accident to negligence in operation, maintenance or design.

Sharp differences also exist as to the existence of insurance coverage for the loss. Nordstrom had told Georgetown that the usual multi-peril ("all risks" in common parlance) policy did not cover swimming pools. Georgetown ordered and paid an extra premium for extended coverage including swimming pools and other structures apart from the residential buildings (to a maximum limit of $25,000).

Unfortunately the policy as delivered to Georgetown, though it did include the swimming pool rider (Endorsement E), omitted the very coverage form (MP 101) to which it was a rider.[2] Had anyone studied the package delivered to Georgetown in detail, the gap in documentation would have been apparent, for:

(1) Among the eight "forms and endorsements" listed on the cover sheet as "applying to Section I" (property coverage) was "MP 101." That form was missing while the other seven were in the package.

(2) Endorsement E itself was captioned "Special Conditions and extensions to MP 101 + MP 126." It specified that its "conditions and Extensions apply only when the aforementioned forms are attached to and made a part of this Certificate." Its swimming pool coverage was specified as an extension of "coverage under MP 101."

But of course no one did study the package or discover the omission until the loss was incurred and the claim was made and refused. This action must determine both the effect of the omission and the effect of MP 101 if it were in fact deemed part of the policy despite its omission.

### Georgetown's Motion

Georgetown urges that the undelivered MP–101 cannot apply to defeat its claim under the policy, and alternatively that if MP 101 were to apply, its provisions do not bar Georgetown's claim. Its summary judgment motion must be denied because both propositions are unclear at this point.

There is law in other jurisdictions—not Illinois[3]—that an endorsement or amendment referred to in, but not attached to, an insurance policy is inoperative as to the insured. *American Family Mutual Insurance Group v. Claggett*, 472 S.W.2d 669, 670 (Mo.App.1971); *Moore v. Home Indemnity Co.*, 274 A.2d 705, 706 (Del.Super.1971); *Hartford Accident & Indemnity Co. v. Shaw*, 273 F.2d 133, 138–39 (8th Cir. 1959) (Missouri law). Of course such cases—even if reflective of Illinois law—would not govern the facts here.

It is one thing to say that an amendment that would vary, add to or subtract from a policy—otherwise complete in itself—but is never delivered to the insured cannot be

---

**2.** Cherokee has moved to strike the affidavit of Mary Patricia Pike, custodian of the insurance policy for Georgetown, and seeks to argue that a genuine issue of fact exists as to whether MP 101 was delivered to Georgetown. But Cherokee has produced neither (a) any evidence that MP 101 was with the other materials sent to Georgetown nor (b) any facts derogating from Ms. Pike's credibility in stating that she placed the policy in the files when received and only

discovered that it lacked MP 101 when it was removed from the files for examination after the loss was sustained and Cherokee rejected the claim. Cherokee's assertion that Georgetown's evidentiary position is weak does not raise a factual issue.

**3.** Neither party has challenged the applicability of Illinois law to this diversity action under *Erie v. Tompkins* principles.

binding on the latter (even though the amendment is referred to in the policy proper). But without more factual support the principle can hardly be stretched to hold ineffective a part of the policy, like MP 101 here, that identifies the basic coverage— what property is insured and to what extent. After all, what remained after ignoring the omitted amendment in each of the other cases was a self-contained policy. If MP 101 is omitted here, what would remain is not self-contained at all.

*J. M. Corbett Co. v. Insurance Co. of North America*, 43 Ill.App.3d 624, 627, 2 Ill.Dec. 148, 151, 357 N.E.2d 125, 128 (1st Dist. 1976) does not counsel a different result. *Corbett* teaches that where information contained in a certificate of insurance conflicts with the terms of the undelivered policy, the terms specified in the certificate must govern. It proceeded from the premise "that all uncertainty should be resolved in favor of the insured" (*id.* at 626, 127, 2 Ill.Dec. 148, 357 N.E.2d 125). But here there is no *conflict* between the provisions delivered to Georgetown and MP 101. Instead they are complementary. On the record before the Court Georgetown has not conclusively negated the proposition that it was on notice that (1) MP 101 contained the substantive policy provisions and (2) those provisions naturally included limitations on coverage.

Georgetown goes on to argue that even if MP 101 must be considered, its exclusions do not defeat the claim. That contention requires little discussion. Four MP 101 exclusions would arguably block Georgetown's claim:

> (1) Section III, Paragraph E states, "The following property is subject to these additional limitations: ... outdoor swimming pools, and related equipment ... are not covered against loss by freezing or thawing, ... or by pressure or weight of ice or water, whether driven by wind or not."

> (2) Section VI, Paragraph D states, "This policy does not insure under this form against ... Loss caused by, resulting from, contributing to or aggravated by any of the following: ... (4) Water below the surface of the ground...."

> (3) Section VI, Paragraph E states, "This policy does not insure under this form against ... Loss caused by: (1) wear and tear, deterioration...."

> (4) Section VI, Paragraph E also states, "This policy does not insure under this form against: ... Loss caused by: ... (7) continuous or repeated seepage or leakage of water or steam from within a plumbing, heating, or air conditioning system ... "

Resolution of the possible applicability of one or more of these exclusions must await further factual development. Whichever expert's version of the accident's cause is accepted by the trier of fact (as well as any other evidence bearing on the issues) may lead to a different conclusion. Certainly at this stage, taking all reasonable factual inferences in Cherokee's favor (as is required on Georgetown's motion) the Court could find at least one of the exclusions applies. That suffices to defeat Georgetown's motion.

### *Cherokee's Motion*

All reasonable factual inferences are taken the other way on Cherokee's summary judgment motion.[4] So taken they preclude a definitive resolution of the policy exclusions in Cherokee's favor at this time. Though Cherokee would seem to have the better of the argument at this time on one or more, that is not enough for summary judgment. In that respect, moreover, it may well be relevant—for which purpose evidence would have to be adduced—whether the policy is indeed one covering "all risks": meant to insure against fortuitous losses of all sorts, and that exclusions of

---

**4.** Cherokee has moved to strike part of the affidavit of Ms. Pike in which she concludes that MP 101 was not received until after Cherokee had disclaimed policy coverage. Whether or not *Ms. Pike* is allowed to state that conclu-

sion, the evidentiary facts she verifies (see n.2) are certainly enough to support such a conclusion by the *factfinder* under summary judgment principles.

particular risks from such policies will only be allowed where a provision is present "excluding the specific loss from coverage." *Dow Chemical Co. v. Royal Indemnity Co.,* 635 F.2d 379, 386 (5th Cir. 1981).

Even more significant, the state of the record forbids the conclusion that in all events MP 101's limitations are binding on Georgetown. It may well be that an estoppel situation is posed here, for the parties have not addressed what discussions preceded or accompanied the ordering of the rider.[5] Even absent meaningful discussions, evidence as to the reasonable expectations of a business purchaser of insurance coverage may be relevant. Neither party has dealt with whether such a purchaser is necessarily placed on notice of the gap in the document package—a bulky package, impressive on its face—delivered by Cherokee.[6] If evidence is that the reasonable purchaser might be obligated to read what was tendered but not necessarily to analyze the contents to detect what was missing, such a purchaser might be misled into not seeking to protect itself by other means against uninsured risks not identified because of Cherokee's fault in omitting MP 101.[7]

It is unnecessary to multiply the examples or prolong the discussion. Cherokee's summary judgment motion must also be denied.

### Conclusion

Each party's motion is denied. Both parties are directed to address any further discovery expeditiously. This case is set for a further status report March 30, 1982 at 9:15 a. m.

---

**5.** On this score an "all risks" understanding by Georgetown might be relevant as well.

**6.** Who on receiving a homeowner's policy, for example, stops to examine and parse its contents in detail?

**7.** Georgetown has proffered specific evidence of the availability of other coverage had Cherokee disclosed its alleged exclusions. Cherokee's motion to strike that proffer is based on a misstatement of the Court's request on that subject at an earlier hearing. It is denied.