JOHN E. BITTING *v.* HOME INSURANCE CO.
[No. 29, April Term, 1931.]

 

 

 

 

 

*Decided June 11th, 1931.*

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

58

*Frank M. Hall,* with whom was *M. Hampton Magruder* on the brief, for the appellant.

*R. E. L. Smith* and *Arthur C. Keefer,* for the appellee.

OFFUTT, J., delivered the opinion of the Court.

This is an appeal from a "judgment on demurrer" entered in the Circuit Court for Prince George's County, for the defendant, in an action on a fire insurance policy, issued by the Home Insurance Company of New York to John E. Bitting, insuring tobacco stored in a barn on the insured's farm in Prince George's County, Md.

Bitting filed in that court an amended declaration, in which, in substance, he stated that on October 17th, 1928, the defendant issued to him a fire insurance policy insuring him to the extent of $2,000 against loss through the damage or destruction by fire of tobacco owned by him and stored in his barn; that on December 12th, 1928, the tobacco was totally destroyed by fire, and that on the following day a written notice of the loss was served upon defendant's agents, as a result of which it sent its agent to inspect the loss, but that it has "totally refused" to pay the "amount of insurance called for in said policy" or any part thereof.

By way of defense the insurance company filed a special plea in which it alleged that "one of the conditions of said policy was and is that unless otherwise provided by agreement in writing added hereto the defendant shall not be liable for loss or damage to any property insured under said policy while encumbered by a chattel mortgage and said policy also provides that 'no one shall have power to waive any provision or condition of this policy except such as by terms of this policy may be the subject of agreement added hereto, nor shall any such provision or condition be held to be waived unless such waiver shall be in writing added hereto'; and the said tobacco insured under said policy was at the time of the fire referred to in the declaration encumbered by a chattel mortgage and there was not added to said policy any agreement of defendant in writing consenting to said

chattel mortgage or agreeing otherwise than to defendant's non-liability while said mortgage covered said tobacco."

To that plea the plaintiff replied, and in his replication admitted that the policy contained the conditions alleged in the plea, and that at the time of the loss the property insured was incumbered by a chattel mortgage, but sought to avoid by averring the following facts, that is to say, that, prior to the issuance of the policy, defendant's soliciting agent saw the plaintiff in reference to renewing a fire insurance policy which he had held in another company, that he "advised" the agent that he "wanted insurance in the sum of $2,000" on a crop of tobacco then stored in his barn and owned by him "in some company" which would permit him to borrow money secured by bill of sale or chattel mortgage on the tobacco; that the agent told him that the company in which he had been insured might object to insuring the tobacco if it "was subject to or would be subjected to" such a lien, but that "he as said agent of the defendant would insure him in the sum of $2,000 on said crop of tobacco, which policy would permit him, the plaintiff, to borrow money on said crop of tobacco, either by way of bill of sale or chattel mortgage." but that such a policy would "cost him more money"; that relying upon the "advice and assurance of the said agent and solicitor of the defendant," he consented to the issuance of "a policy" by said defendant in the sum of $2,000 on said tobacco, and "a policy" was in fact issued to him, and the premium thereof paid, and that thereafter "by reason of the assurance of the said agent and solicitor of the defendant, and relying on the same," he borrowed "by way of chattel mortgage" $500 on the tobacco covered by the policy. The replication then concludes as follows: "Wherefore, the plaintiff relying as aforesaid on the statements made by the agent and solicitor of the defendant both prior to the issuance of said policy and at the time of the procurement of said chattel mortgage as aforesaid, and that the terms and conditions of said policy were in accord with the representations made by said agent and solicitor of said defendant, felt secure in that he was protected under said policy to the extent of $2,000;

and at the time of the execution of the chattel mortgage aforesaid, he was not aware of nor did he know by reason of the assurance of the agent and the solicitor of the defendant that because he had in fact borrowed money on said tobacco, insured as aforesaid, there was any obligation on his part to have endorsed thereon or added to said policy any agreement in writing on the part of the defendant consenting to said chattel mortgage, or any waiver in writing added to said policy in this regard."

A demurrer to that replication was sustained on December 9th, 1930, and on March 4th, 1931, a judgment "on demurrer" for the defendant was entered by "order of court."

That reply to appellee's defense involves two propositions; one, that the assurance given by defendant's agent before the policy was issued, that he as defendant's agent would insure the plaintiff in the sum of $2,000 on said crop of tobacco, which policy would permit him to borrow money on said crop of tobacco either by way of bill of sale or chattel mortgage, estops the insurer from asserting a provision in the policy actually delivered to and accepted by him which relieved the insurer from loss, if at the time it occurred the property was incumbered by a chattel mortgage, unless it had in writing assented to such incumbrance; and two, that such statements repeated by the agent at the time plaintiff placed a chattel morgtage on the property amounted to a waiver by the insurer of that provision.

Estoppel is cognizable at common law either as a defense to a cause of action, or to avoid a defense (21 C. J. 1244), and while ordinarily an estoppel *in pais* need not be specially pleaded (*Id.* 1240; *National Shutter Bar Co. v. Zimmerman,* 110 Md. 313, 73 A. 19; *Albert v. Freas,* 103 Md. 583, 64 A. 282; *Babylon v. Duttera,* 89 Md. 444, 43 A. 938; *Brooke v. Gregg,* 89 Md. 234, 43 A. 38; *Higgins v. Carlton,* 28 Md. 115), yet where it is relied upon to avoid a defense set up in a special plea it too must be specially pleaded. *Hayes and Wife v. Va. Mut. Protection Assn,* 76 Va. 231. Such a pleading is sufficient if, without reference to mere form, it states facts which are in substance a sufficient reply

to the defense ('Code, art. 75, secs. 2, 3, 8), provided it gives color to defendant's plea by confessing its averments. 49 C. J. 292. So that the question is, are the facts stated in the replication sufficient to estop the defendant from asserting the defense relied upon in its special plea, identified as Defendant's Plea No. 4?

In dealing with that question, it may be assumed that any knowledge of defendant's soliciting agent, acquired before the issuance of the policy and while acting within the scope of his authority in its negotiation, will as to that particular business be imputed to his principal. 26 C. J. 296; *West End Hotel Co. v. American F. Ins. Co.* (C. C.), 74 F. 114, 115; *Travelers' Ins. Co. v. Melman,* 147 Md. 459, 128 A. 125; *Mut. F. Ins. Co. v. Owen,* 148 Md. 257, 129 A. 214. And it has repeatedly been held by this court that provisions in a policy which deny to the agent the power to waive any of its conditions have no application to acts done or statements made at its inception (*New York Life Ins. Co. v. Rogers,* 156 Md. 92, 143 A. 651; *Dulany v. Fidelity & Cas. Co.,* 106 Md. 34, 66 A. 614; *Forwood v. Prudential Ins. Co.,* 117 Md. 260, 83 A. 169; *Hartford Fire Ins. Co. v. Keating,* 86 Md. 130, 38 A. 29), and in themselves impose no limitation upon the agent's authority to bind his principal by representations material to the negotiation of the policy made before the issuance thereof.

The demurrer concedes the truth of all well-pleaded averments of fact in the replication, and it may therefore be assumed that, prior to the issuance of the policy which is the basis of this action, the defendant promised the plaintiff that it would issue to him a policy insuring him to the extent of $2,000 against loss by the destruction or damage by fire of tobacco owned by him, which policy would permit him to incumber the insured property by a chattel mortgage, but would "cost him more money" than a policy which permitted no such incumbrance. But the language of the pleading is too vague and indefinite, considered in its entirety, to be accepted as a sufficient statement that the plaintiff agreed to accept such a policy, if offered to him. And the policy

which actually was issued to him and which he accepted contained a provision that, unless otherwise agreed to by the insurer in writing, it should be relieved of liability for any loss or damage to the property while incumbered by a chattel mortgage. The replication further states that, by "reason of the assurance" of defendant's agent and "relying" upon the same, he placed a chattel mortgage for $500 on the insured property, and that, "relying upon statements made by defendant's agent both prior to the issuance of said policy and at the time of the procurement of said chattel mortgage," he felt "secure," and did not know that there was any obligation upon his part to secure the written consent of the defendant to the lien.

If it was the purpose of the pleader to allege in effect that defendant by misleading representations tricked him into accepting the policy in the belief that it permitted him, without any further act on the part of the insurer, to incumber the property covered by it, when in fact it prohibited any such incumbrance unless the written consent of the insurer were added to the policy, the replication fails to allege facts sufficient to support that hypothesis. Nor, assuming, without deciding, that the facts which it does allege are sufficient ground for the reformation of the policy in equity, are they a sufficient reply to the defendant's special plea in an action at law. Nowhere in the replication is there any definite statement that the plaintiff did not know, when he accepted it, or at the time he incumbered the property covered by it, that the policy contained a provision against incumbrances, but the pleader attempts to supply that omission by such vague and equivocal statements as that "relying" on statements by defendant's agent he felt "secure," and that "by reason" of such statements "he was not aware of nor did he know" that there was "any obligation on his part to have endorsed" on or added to the policy any agreement in writing by the insurer permitting the insured property to be incumbered. Such statements had no legal significance unless the appellant further stated why he "felt secure" and why he did

not know that he was obliged to do what the explicit language of the policy which he had accepted required him to do.

Much is said in the appellant's brief about "promises" and "representations," of defendant's agent, but the pleading does not refer to any promise at all, and the only "representations" to which it refers are contained in the statement that defendant's agent informed plaintiff that he would "insure him in the sum of $2,000, * * * which policy would permit him, the plaintiff, to borrow money on said crop of tobacco either by way of bill of sale or chattel mortgage, but it would cost him more money to get a policy in defendant's company, which would permit a lien by way of bill of sale or chattel mortgage, and the plaintiff relying on the advice and assurance of the said agent and solicitor of the defendant, consented to the issuance of a policy by said defendant in the sum of $2,000.00 on said tobacco, and the said policy was in fact issued to the plaintiff on the 17th day of October, 1928, as evidenced by policy No. HY30034, and the premium thereon in the sum of $30.00 was duly paid." If in fact at the time he executed the chattel mortgage the plaintiff had not read and did not know the contents of the policy, and if his failure to read it or learn its contents was due to any false or fraudulent statements by defendant's agent as to its contents, he should have so stated in the replication. But, as drawn, it may with equal reason be inferred either that when he incumbered the insured property plaintiff did not know what the policy contained, or that he did know of the provision in it against incumbrances, but, relying upon the agent's statements, assumed that they would be waived as to him. In the absence of any direct definite statement in the replication of the actual facts, either inference would be wholly conjectural, and for that reason the language of the pleading is too uncertain and general to allow the construction which the plaintiff appears to place upon it.

There is nothing in the language quoted which permits us to say that plaintiff even agreed to accept the special policy which would have permitted him to incumber the insured property, or that the thirty dollars paid for the policy

delivered to him was the premium on the regular or standard policy or was, because of the character of the policy which he says should have been issued to him, greater than the premium on a standard policy for a like amount on property such as that insured and stored in like manner. Certainly there is nothing in it to suggest that the agent by word or act led the plaintiff to believe that he need not read or examine the policy when it was delivered to him and in his possession, or inform himself of its contents. If in fact he knew, when he incumbered the property, that by the terms of the policy the insurer was not liable for its loss or damage by fire while so incumbered, unless it agreed to the incumbrance in a writing added to the policy, then by other terms the contract itself determined finally and definitely that "no one" should have the power to bind the company by an oral waiver of that provision. *Rhode Island Ins. Co. v. Phelps,* 141 Md. 370 *et seq.,* 118 A. 749. And since it will be presumed, in the absence of fraud preventing such knowledge, that he did know what the terms of the policy were (*Bakhaus v Caledonian Fire Ins. Co.,* 112 Md. 695, 77 A. 310; *Miller v. Home Ins. Co.,* 127 Md. 147, 96 A. 267), until reformed, he is bound by its terms.

If in fact it was not the policy for which he had bargained, he could have applied to a court of equity for its reformation, and that court could not only have reformed it, but could in the same proceeding also have required the defendant to pay such loss, if any, as the plaintiff may have suffered through the destruction or damage by fire of property covered by the policy as reformed. *Md. Home Ins. Co. v. Kimmell,* 89 Md. 437, 43 A. 764; *Ben Franklin Ins. Co. v. Gillett,* 54 Md. 218; *Delaware F. & M. Ins. Co. v. Gillett,* 54 Md. 221. But until reformed the policy accepted by the plaintiff is the only contract between the parties and is the basis of this suit. And neither the fact, if it was so, that the defendant defaulted in its agreement to issue to him another kind of policy, or that he failed to understand the terms of the contract which actually was issued to him, can estop the defendant from setting up as a defense to an action on that policy

a violation of its terms by the plaintiff. In a court of law the plaintiff cannot at the same time affirm the policy by suing on it, and avoid it by saying that it is not the real contract which he made with the defendant.

In referring to facts not unlike those in issue here, it was said in *Delaware F. & M. Ins. Co. v. Gillett, supra*:

"But where the action arises upon a written contract which, from mistake or fraud, fails to express the actual agreement of the parties, it is a matter peculiarly within the jurisdiction of a court of equity to reform such contract, and to grant relief in accordance with the intention of the parties.

"The fact, therefore, that the complainant might have enforced the payment of the loss to the property insured in an action at law, on the policy, is no answer to the exercise of jurisdiction by a court of equity upon the facts stated in this bill. Nor are we prepared to admit that his remedy at law would have been as certain and adequate in all respects as in a court of equity."

But the doubt which the court expressed as to the adequacy of the plaintiff's legal remedy in the case last cited becomes a certainty when considered in connection with the facts in this case. For as said in *Lumber Underwriters v. Rife,* 237 U. S. 609, 35 S. Ct. 717, 59 L. Ed. 1143, by Mr. Justice Holmes: "Therefore, when, by its written stipulation, the document gave notice that a certain term was insisted upon, it would be contrary to the fundamental theory of the legal relations established to allow parol proof that at the very moment when the policy was delivered that term was waived. It is the established doctrine of this court that such proof cannot be received. * * * There is no hardship in this rule. No rational theory of contract can be made that does not hold the assured to know the contents of the instrument to which he seeks to hold the other party. * * * Of course, if the insured can prove that he made a different contract from that expressed in the writing, he may have it reformed in equity. What he cannot do is to take a policy without reading it, and then, when he comes to sue at law upon the

instrument, ask to have it enforced otherwise than according to its terms. The court is not at liberty to introduce a short cut to reformation by letting the jury strike out a clause." *Rose's Notes on U. S. Rep.*, vol. 5, page 389.

It follows from what has been said that the demurrer to appellant's replication to the appellee's fourth plea was properly sustained, and the judgment appealed from will be affirmed.

*Judgment affirmed, with costs.*