JORDAN, ET AL. *v.* MORGAN, ADM'X OF THE ESTATE OF GEORGE THOMAS MORGAN, ET AL.

[No. 18, September Term, 1968.]

*Decided January 14, 1969.*

The cause was argued before HAMMOND, C. J., and MAR-BURY, BARNES, McWILLIAMS, SINGLEY and SMITH, JJ.

*Bernard Brager* for appellants.

*Hal C. B. Clagett,* with whom were *Thomas A. Farrington* and *Sasscer, Clagett, Powers & Channing* on the brief, for appellees.

SMITH, J., delivered the opinion of the Court.

The sole question presented in this case is whether the administratrix of the estate of George Thomas Morgan (Morgan) is estopped from pleading limitations. This case was before us previously in *Jordan v. Morgan,* 247 Md. 305, 231 A. 2d 13 (1967) at which time it was remanded for further proceedings.

An accident took place on March 14, 1964, in St. Mary's County in which George Thomas Morgan was killed. Letters of administration on his estate were granted Frances Jane Morgan on August 4, 1964. This action was filed on March 2, 1966. Code (1964 Repl. Vol.) Art. 93, § 112 as it existed at the time of the filing of this action required such suit to be brought

"* * * within six calendar months after the date of the qualification of the * * * administrator * * *."

Morgan moved for summary judgment setting forth in the motion the date of qualification of Morgan and Jordan's failure to file the action within six months after such qualification. Appellant (Jordan) in the answer to the motion said:

"* * * [B]ecause of certain statements, representations and inducements made by duly authorized agents and representatives of the Defendant, the Plaintiffs were lulled into a false sense of security and induced, thereby, to refrain from filing suit within the six-month limitation period provided by Article 93, Section 112, and that by reason thereof, the Defendants waived the provisions of and are estopped to rely on the six-month limitation period as a defense to this suit."

In support of Jordan's motion there was filed the affidavit of Bernard Brager, Esq., counsel for Jordan which repeated the above and went on to narrate contacts between Brager and various representatives of Nationwide Insurance Company. The portion directly pertinent here is as follows:

"* * * Once again, on September 25, 1964, he phoned Mr. [Edward A.] Kracke [Field Claimsman of Nationwide] and, once again, was informed that no word had been received from the Annapolis office, but that he would offer $750.00 for each claim. These offers were not acceptable. On October 12, 1964, by phone conversation, Mr. Kracke advised Affiant to deal directly with the Annapolis office, which he did that same day, by phone, and spoke with a Mr. Nye, who referred him to the Company's attorney, Hal C. B. Clagett, Esquire. He called Mr. Clagett's office in Upper Marlboro on November 3, 1964; however, did not reach him. On November 30, 1964, he spoke with Mr. Clagett by phone and was informed that a suit for declaratory judgment would be filed in the Circuit Court for St. Mary's County. *He further stated* that the pur-

pose of filing such a suit was to determine whether or not the deceased tortfeasor's JR-11 insurance carrier was responsible for coverage and that *it was not necessary to make any move or file suit until the matter was disposed of*. Mr. Clagett also stated that part of the suit for Declaratory Judgment had already been drawn. No further conversations were had until February 9, 1965, when Affiant once again spoke with Mr. Clagett by phone and was informed that the suit for Declaratory Judgment still had not been filed. By a letter from Mr. Clagett dated March 9, 1965, Mr. Brager was informed that a suit for declaratory judgment in connection with the above-captioned matter and all other claims arising out of the accident of March 14, 1964 would be filed within the next few days * * *. After service of summons of this Declaratory Relief had been made upon his clients, they forwarded the suit papers to his office * * *. A Demurrer and Answer to Declaration was mailed to Affiant's office on May 11, 1965 from the law office of Couch, Blackwell and Miller, Attorneys for Defendant State Farm Insurance Company in the Declaratory Relief Action * * *. On July 19, 1965, Mr. Brager phoned Mr. Clagett's office and was informed that it was not necessary to await the outcome of the Declaratory Relief action. He further stated that Affiant was 'out completely'. The Declaratory Relief was then settled between the parties thereto sometime in September of 1965." (emphasis supplied)

Mr. Clagett in his affidavit in support of the motion for summary judgment filed after the Brager affidavit stated:

"That in November, 1964, he talked on the telephone to Bernard Brager who identified himself as being the attorney for plaintiffs in the above captioned case and on behalf of his clients wished to discuss settlement of their claims; that he advised Mr. Brager that he had no authority to discuss settlement because there was a question of coverage; that the deceased

Morgan boy had been driving Father Malloy's car without permission and there would be no obligation on behalf of Nationwide if there was no coverage; that a declaratory judgment action was going to be filed to determine whether State Farm or Nationwide Insurance Company had primary coverage and the obligation to defend; that there were then pending two suits in the Circuit Court for St. Mary's County to which no plea on behalf of the Administratrix of the deceased Morgan would be filed until the dispute with respect to coverage had been resolved; that we intended to enjoin further proceedings in this suit; that *there was no need for him to do anything or file suit in connection with this matter of coverage since his clients would be made parties in the declaratory judgment action;* however, when he next contacted them he should tell them to let him know when the suit papers were served, although an information copy would be sent to him; that on February 9, 1965, he again talked to Mr. Brager and substantially repeated the earlier advice, namely, of the intention to file a declaratory judgment action but had not as yet done so nor had a plea been filed to the St. Mary's County cases that the attorney representing the plaintiff in those cases had agreed to an extension of time until the declaratory judgment action and the question of coverage were determined; that the Morgan boy had been driving Father Malloy's car without permission when the accident occurred and there would be no obligation on behalf of Nationwide to defend if there were no coverage; that he was not interested in discussing any settlement or evaluation of the claims; that on March 9, 1965, the Declaration for declaratory relief was completed and Mr. Brager was advised by letter that it would be filed within the next few days and a copy would be served on his clients and a copy would be sent to him for his information and file; that on March 16, 1965, the declaratory action was filed in the Circuit Court for St. Mary's County, Law No. 3356, along with a

motion upon which an order for temporary injunction was signed by Judge Dorsey on March 17, 1965, staying further action in Law Nos. 3192 and 3193; that on the following day, March 18, 1965, a copy of the declaration for declaratory relief was mailed to Mr. Brager and he was again advised by letter that service of the same suit papers would be made by the sheriff upon the defendants named and responsive pleading could be filed as deemed appropriate; that on May 11, 1965, a Demurrer and Answer to Declaration (for declaratory relief) was filed by Couch, Blackwell and Miller as attorneys for State Farm Insurance Company and the limitations effect of Article 93, § 112 was raised; that this was the first time that the applicability of this statute became a matter of concern to the parties or their counsel in these proceedings; that on July 19, 1965, Mr. Brager telephoned and asked about the status of the declaratory judgment case in St. Mary's County which had been scheduled for hearing on that day; that he was advised it had been postponed, whereupon further discussion followed with respect to the interests of his clients; that he advised Mr. Brager of the point raised by Mr. Blackwell's Demurrer and if he had not sued they would be barred since filing within six months of the appointment of the Administratrix of Morgan deceased was a condition precedent; that it was affiant's definite impression and it is his firm belief that this was the first date that Mr. Brager became aware of the applicability of Article 93, § 112 to the claims of his clients in this cause; that at no time prior to this date had this statute or its applicability to the case been discussed with Mr. Brager; that at no time prior to May 11, 1965, had affiant thought in terms of the applicability of the statute to these claims; that at no time in his conversations with Mr. Brager prior to May 11, 1965, had he thought in terms of the applicability of the statute to these claims or been consciously aware of it; that all of his thoughts, inten-

tions, purposes and designs were entirely free of any taint of duplicity, ulterior motive, fraud or bad faith; that he simply was not thinking in terms of any positive defense other than no policy coverage or obligation of his client, Nationwide Insurance Company to defend under the terms of its policy; that he simply had not directed his thoughts along the line of preparing responsive pleading or formal defense of any suit or claim including and specifically those of Mr. Brager's clients; * * *." (emphasis supplied)

The trial court granted Morgan's motion for summary judgment.

Maryland Rule 610 d 1 is applicable here. It provides in pertinent part:

"The judgment sought shall be rendered forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law."

In *Whalen v. Devlin Lumber & Supply Corp.*, 251 Md. 51, 246 A. 2d 247 (1968) we said:

"The function of an affidavit in opposition to a motion for summary judgment was set out in *Molesworth v. Schmidt*, 196 Md. 15, 75 A. 2d 100, citing *United States to use of General Electric Co. v. Schofield Co.*, 182 Fed. 240 (E.D. Pa.) : '[An affidavit in opposition] need not set up a defendant's whole case; it need do no more than show one sufficient reason why summary judgment should not be entered. If required to examine it, the court must do so and decide whether, if true, it presents a defense that should be sustained in whole or in part; and, if such a defense be set up, summary judgment must be refused . . . .' " *Id.* at 54.

We consider this case, therefore, on the basis of the italicized portion of the Jordan affidavit as representing the crux of the case.

In *Chandlee v. Shockley,* 219 Md. 493, 150 A. 2d 438 (1959) in an opinion by Judge (now Chief Judge) Hammond we said:

"We hold that an executor or administrator against whom a claim is asserted by virtue of Code, 1957, Art. 93, Sec. 112, may waive or be estopped to rely on the time limit of the statute." *Id.* at 502.

In that case the administratrix qualified on October 18, 1956. Suit was filed June 25, 1957. A pertinent part of the opinion states further:

"Particulars filed in response to demand set forth various verbal communications between the appellant's attorneys and persons alleged to have been acting in behalf of the administratrix over a period from October 15, 1956, to May 15, 1957, particularly a Mr. Petrick, who, when told by appellant's counsel that he wanted to be sure, if settlement failed, that Petrick would not 'knock me out of Court by pleading limitations', replied: 'There is no reason for you to say that. * * * I think this is the type of a claim which can and should be settled out of court. * * * We will not take any more advantage of you than I know you will take of us. My company does not work that way.' Mr. Petrick also said on a later occasion that nothing would be gained by filing suit, that more time was necessary to learn the extent of the damages, and that he would not take advantage of a delay. 'My company does not make a practice of taking advantage of legal technicalities in order to keep from paying legitimate claims. Insofar as I know, we are not arguing here over liability. We are discussing damages and you can take my word for it that there is no reason for you to file suit. I repeat, don't file suit, because there is no reason for it.' The appellant was hospitalized on several occasions and not finally released until after the six-month period had expired. Between May 15 and June 21, repeated efforts to reach Mr. Petrick failed, and suit was then filed." *Id.* at 495.

In *Cornett v. Sandbower,* 235 Md. 339, 201 A. 2d 678 (1964) we held there was no waiver or estoppel barring the plea under Section 112 of Article 93 by the administrator. Suit was instituted there approximately nine months after the qualification of the administrator. Counsel for the claimant knew that the decedent had lived close to the Howard and Carroll County line. Inquiry was made of the Register of Wills for Howard County as to whether letters of administration had been granted. No inquiry was made of the Register of Wills for Carroll County until almost nine months after the granting of letters of administration in Carroll County. There was correspondence between the claimant's attorney and the insurer of the decedent, but it was not shown that the attorney ever asked the insurer whether an administrator had been appointed. Speaking through Judge Sybert we there said:

> "In the instant case, however, *there is no indication that the delay in filing suit was induced by any action of the appellee. Nor was there any showing of fraud.* Instead, the only conclusion that can be drawn from the evidence is that the delay was due to a lack of diligence on the part of the appellant. The grounds asserted as a basis for holding that there was a waiver are not persuasive. There was no showing that the decedent's insurer was acting as the appellee's agent in its correspondence with the appellant, but even if it was, *there is nothing in the record to show that the insurer held out any inducement not to file suit or indicated in any way that limitations would not be pleaded." Id.* at 342. (emphasis added)

In *Bertonazzi v. Hillman,* 241 Md. 361, 216 A. 2d 723 (1966) we held the statute tolled by a suit brought in a county in which neither the decedent nor his administratrix resided, but brought within the six-month period. After the expiration of the six-month period a motion to quash was filed and granted. Immediately thereafter suit was refiled on the same day in the proper jurisdiction. The claimant there relied on estoppel and on the proposition that the filing of the former suit tolled the statute. We agreed with the latter premise, but through our present Chief Judge Hammond we said:

"We see no support whatever in the record for a finding of waiver or estoppel. Neither in the plea of estoppel nor in a long letter to Judge Byrnes is there mention of or reference to any express promise or agreement of Mrs. Hillman or her lawyer to waive the statute. It may well be that appellant's lawyer had the notion that the mere acceptance of service would toll the statute, but if he did, nothing that Mrs. Hillman or her lawyer said or did inspired or fostered the idea. There is no assertion that the representatives of Mr. Hillman's insurer led appellant to believe that liability would not be contested or that any legal defense would be waived." *Id.* at 365.

3 Pomeroy, *Equity Jurisprudence,* page 189, § 804 (5th Ed. 1941) defines equitable estoppel as follows:

"Equitable estoppel is the effect of the voluntary conduct of a party whereby he is absolutely precluded, both at law and in equity, from asserting rights which might perhaps have otherwise existed, either of property, of contract, or of remedy, as against another person, who has in good faith relied upon such conduct, and has been led thereby to change his position for the worse, and who on his part acquires some corresponding right, either of property, of contract, or of remedy."

This definition is cited verbatim in *Savonis v. Burke,* 241 Md. 316, 319, 216 A. 2d 521 (1966), and *Bayshore Industries, Inc. v. Ziats,* 232 Md. 167, 175, 192 A. 2d 487 (1963), among other cases.

"Equitable estoppel operates as a technical rule of law to prevent a party from asserting his rights where it would be inequitable and unconscionable to assert those rights. (citing authorities) It is essential for the application of the doctrine of equitable estoppel that the party claiming the benefit of the estoppel must have been misled to his injury and changed his position for the worse, having believed and relied on the

representations of the party sought to be estopped. (citing authorities) Furthermore, one claiming the benefit of an equitable estoppel must have acted in 'good faith and with reasonable diligence.' (citing authorities)

\* \* \*

"\* \* \* Mere silence, moreover, would not work an estoppel where there was no duty to speak." *Savonis, supra,* at 319-320.

In *Bayshore Industries v. Ziats, supra,* Chief Judge Brune said for this Court:

"\* \* \* [W]hether the doctrine of equitable estoppel should or should not be applied depends upon the facts and circumstances of each particular case, and unless the party against whom the doctrine has been invoked has been guilty of some unconscientious, inequitable, or fraudulent act of commission or omission, upon which another has relied and been misled to his injury, the doctrine will not be applied." *Id.* at 176.

We assume without deciding that Mr. Clagett as counsel for Nationwide Insurance Company was acting as the agent of Morgan. Mr. Brager, counsel for Jordan, is an experienced attorney. He said he had full knowledge of the statute. This case is vastly different from *Chandlee v. Shockley, supra.* There is no showing that Mr. Clagett held out any inducement not to file suit. There is no indication that Mr. Clagett indicated in any way that limitations would not be pleaded. There is no indication that any legal defense would be waived. There is no showing of any unconscionable, inequitable or fraudulent act of commission or omission upon which Jordan relied and has been misled to his injury. Accordingly, the motion for summary judgment was properly granted.

*Judgment affirmed, appellants to pay the costs.*