THE JOHNS HOPKINS HOSPITAL *v.* JAMES W.
LEHNINGER

[No. 1048, September Term, 1980.]

*Decided May 6, 1981.*

The cause was argued before GILBERT, C. J., and MELVIN and COUCH, JJ.

*Angus R. Everton* and *John F. King,* with whom were *Anderson, Coe & King* on the brief, for appellant.

*Marvin Ellin,* with whom were *Donald F. Oakley* and *Ellin & Baker* on the brief, for appellee.

COUCH, J., delivered the opinion of the Court.

In 1979 James W. Lehninger sued The Johns Hopkins Hospital (the Hospital) alleging that he suffered a serious disability because of negligent acts committed by the Hospital's agents in 1971 and 1973.

The Hospital answered the declaration by denying the alleged wrongs, and invoking the applicable statute of limitations.

At trial the court granted a directed verdict in favor of the Hospital as to the running of the statute of limitations. Issues were submitted to the jury, however, concerning whether the Hospital was negligent and whether this negligence estopped the Hospital from raising the defense of limitations. The jury answered these issues in Lehninger's favor and awarded him two million dollars ($2,000,000.00).

On appeal the Hospital, appellant, presents three questions for our consideration:

I. Should the case have been submitted to arbitration, under the terms of the Health Care Malpractice Claims Act, Md. Cts. & Jud. Proc. Code Ann. §§ 3-2A-01, *et seq.,* as a condition precedent to trial?

II. Did the trial court err in permitting consideration by the jury of whether the appellant should have been estopped from asserting the defense of limitations?

III. Was prejudicial error committed in permitting an economist to project the future earning capacity of Lehninger on the basis of flawed and speculative economic methodology?

For the reasons set forth in this opinion we hold that the case was properly heard in the trial court rather than in an arbitration proceeding. Nevertheless, we hold that the judgment of the trial court must be reversed, and the case remanded for dismissal without a new trial, because the trial court erred in permitting the jury to consider whether the appellant should have been estopped from asserting the defense of limitations.

Because our latter holding disposes of the case, we need not address the appellant's third question.

## The Facts

In 1971 James W. Lehninger, appellee, attended the Johns Hopkins University as a third-year medical student. On January 10, 1971, while walking up a Pennsylvania ski slope, Lehninger slipped on ice and fell against his right hip. Because of the pain and discomfort in his hip, Lehninger returned to Baltimore.

The next day, January 11, 1971, Lehninger went to the Student Clinic of The Johns Hopkins Hospital. His medical history was recorded, and an x-ray was taken of the right hip. A physician-employee of the Hospital, Dr. Jacobs, then advised Lehninger that "the x-ray looked fine and there was

no fracture." Lehninger learned that his injury was diagnosed as "just a bruise or a strain," requiring him to "take it easy for a couple of days." The clinic provided him with a cane, and the clinic's physician told Lehninger that he could place weight on the right leg.

Despite chronic severe pain, Lehninger resumed his student activities. On January 14, 1971, while walking to his car, Lehninger slipped on the icy pavement and again fell on his right hip. Unable to move himself, Lehninger was carried by friends to his apartment, and later taken by ambulance to the Johns Hopkins Hospital.

An x-ray taken at the Hospital's emergency room revealed a displaced fracture of the femoral neck of Lehninger's right hip. Immediate surgery was performed involving the reduction of the fracture and the insertion of metal hardware referred to as a Knoll's pin and a Ken nail. This procedure secured the fracture site, and required that the hardware remain in place in the hip for almost two years.

Following treatment and periodic x-rays of his hip, Lehninger completed medical school in June, 1972. He moved to California and began an internship. Lehninger returned to the Hospital on December 16, 1973. An additional x-ray was taken, and the metal hardware was removed on December 18, 1973. Dr. Robinson, Chief of the Hopkins' Department of Orthopedics, who performed the January 14, 1971 surgery, assured Lehninger that the x-ray showed the hip to be free of any abnormality, and not requiring further orthopedic treatment. Lehninger was told that he could resume his usual activities after a brief recuperation.

Lehninger returned to California, continued his work as a resident physician, and eventually resumed a regimen of strenuous physical exercise. Soon his leg felt fine enough to permit him to run long distances and play tennis daily.

During the late summer of 1977, while playing tennis, Lehninger felt "something snap" in his leg. A chronic pain developed in his right hip, and after several days he visited

Dr. Finerman, a Los Angeles orthopedist. In September of 1977, Lehninger was informed that he "had a serious disease ... called avascular necrosis."

Avascular necrosis is a condition of bone deterioration or bone death resulting from the disruption of the blood supply to certain areas of the skeletal system.

After returning to Baltimore, Lehninger again saw Dr. Robinson, who consulted another orthopedist, Dr. Hungerford. Having reviewed the x-ray made in December of 1973, Dr. Hungerford wrote on October 31, 1977 that Lehninger's condition was "suggestive of the possibility of avascular necrosis." Films dated October of 1977 showed Dr. Hungerford a "significant collapse" of certain segments of Lehninger's femur. During the next year Lehninger obtained his medical records from the Hospital, and consulted with physicians in Boston and Philadelphia.

On April 16, 1979, Lehninger filed suit against the Hospital alleging that the Hospital's agents:

(1) on January 11, 1971 negligently informed Lehninger that his hip was normal, having failed to diagnose his injury as an undisplaced fracture, and

(2) on or about December 24, 1973, negligently assured Lehninger that he would not develop a bone disease.

Trial commenced in the Baltimore City Court on May 27, 1980. Evidence at the trial revealed that the x-rays of Lehninger's initial injury, taken on January 11, 1971, were examined by Dr. DiSimone, a radiologist at the Hospital. In a report dated January 13, 1971 Dr. DiSimone interpreted these x-rays to be normal, and not showing a definite fracture. Thus, he confirmed the diagnosis given to James Lehninger by Dr. Jacobs.

Dr. DiSimone testified that competent radiologists, acting within their standard of care, would probably have interpreted the January 11th x-ray as showing a normal hip. Under cross-examination, however, the witness stated that soon after James Lehninger's second fall and injury, the

January 13th report concerning the initial injury was amended. The amendment reflected the possibility of a "subtle impacted fracture of the neck of the right femur."

Testifying for the plaintiff, Dr. Schoedinger, an orthopedic surgeon, stated that the x-ray taken on January 11, 1971 showed clear evidence of a fracture. A pathologist, Dr. Combs, concurred in this opinion of the severity of the initial injury.

After the surgery of January 14, 1971 for the subsequent fracture James Lehninger learned from Dr. Robinson of the serious nature of the first fracture.

Dr. Robinson testified that on January 14, 1971 he discussed James Lehninger's prognosis with the patient's father, Dr. Albert Lehninger, a professor of biochemistry. Dr. Robinson had described the possible complications of the bone displacement injury, how such an injury could affect the femur's blood supply, and could cause avascular necrosis.

Albert Lehninger confirmed the substance of that conversation, but testified that the discussion occurred within two weeks after the operation, rather than immediately afterwards.

James Lehninger similarly testified that, on several occasions during the first year after his injury, he discussed with his doctors the possibility of medical complications, especially avascular necrosis. He received repeated assurances that he had not developed bone disease. Hospital doctors provided these assurances, based on their interpretation of x-rays taken periodically during 1971 and 1972.

James Lehninger did not learn until years later that a "liver scan" test conducted on June 8, 1971 produced what Dr. Robinson reported in September, 1971 as "very tenuous evidence of avascular necrosis in the right femoral head." This test was conducted during a medical examination of Lehninger for problems of weakness and low-blood sugar unrelated to the hip injury. Uncontradicted testimony indicated that the liver scan was not designed to diagnose avascular necrosis, and that the presence of metal hardware

in Lehninger's hip could have affected the test's results. The correct diagnostic tool for avascular necrosis was stated to be x-rays.

On the basis of his interpretation of the x-ray dated December 17, 1973, Dr. Robinson reassured Lehninger that no evidence indicated avascular necrosis. In December of 1973 Lehninger was also informed that he probably would not develop the disease in the future, because, as he testified, "if I was going to get it I would have gotten it by then, so there was no need for any further x-rays."

Expert witnesses for Lehninger testified that the December 17, 1973 x-ray showed "an early change" indicative of avascular necrosis. The Hospital's witnesses stated their opinion that this x-ray did not disclose avascular necrosis.

Lehninger testified at the trial that following the 1977 manifestation of the extent of his injury, he suffered difficulty in walking long distances without the use of crutches. The injury impeded his mobility in hospital wards, and prevented his working in private practice, according to Lehninger. He decided, therefore, to restrict his career to medical research and teaching. An economist indicated that Lehninger's career restriction would result in a substantial loss of future income.

At the close of all evidence in the case, the Hospital filed a motion for mistrial or for directed verdict. On June 9, 1980, the trial judge granted a directed verdict in favor of the Hospital as to the running of the three-year statute of limitations. This ruling was based on an essentially undisputed finding that Lehninger discovered the alleged negligence of January 11, 1971 soon after he sustained the displaced fracture of January 14, 1971.

Based on the insufficient evidence of any intentional or otherwise fraudulent concealment of Lehninger's condition, the trial judge ruled that the statute of limitations had not been tolled by fraud under Md. Cts. & Jud. Proc. Code Ann. § 5-203.

The trial judge, however, ruled that the issues of estoppel and negligence should be submitted to the jury. The jury

found in Lehninger's favor on these issues. The trial judge also ruled against the Hospital on its motions for judgment n.o.v. or for new trial. The Hospital filed an appeal; no cross-appeal was taken by Lehninger.

## The Law

### I. Arbitration

As a threshold question on appeal, the Hospital challenges the jurisdiction of the Baltimore City Court in hearing this case without the action's prior filing with the Maryland Health Claims Arbitration Office. At the trial level the Hospital moved to dismiss the case contending that Lehninger failed to exhaust his remedies under the Health Care Malpractice Claims Act, now codified at Md. Cts. & Jud. Proc. Code Ann. §§ 3-2A-01, *et seq.* The trial court denied the Hospital's motion, and we affirm that decision.

The legislature enacted the Health Care Malpractice Claims Act (the Act) as a means of alleviating a perceived crisis in the area of medical malpractice insurance. *See generally, Attorney General v. Johnson,* 282 Md. 274, 385 A.2d 57, *appeal dismissed,* 439 U.S. 805 (1978).

The Act requires submission of medical malpractice claims to non-binding arbitration prior to filing of an action in damages, for more than $5,000.00, in any Maryland court. See *Bishop v. Holy Cross Hospital,* 44 Md. App. 688, 410 A.2d 630 (1980).

Section 5, Chapter 235, Acts 1976 of the Act sets forth the effective date of the Act's preceding elements, stating that:

> "[T]his Act shall take effect July 1, 1976 and shall apply only to medical injuries occurring on or after that date."

The Hospital contends, without authority, that the Act applies to all health care *claims filed* after the effective date of the Act, regardless of the date of the occurrence of the "medical injuries." Alternatively, the appellant argues that the Act should apply in the present case because Lehninger's

medical injuries continued to manifest themselves after the Act's effective date.

Our recent decision in *Dennis v. Blanchfield,* 48 Md. App. 325. 428 A.2d 80 (1981), controls the issue of jurisdiction under the Act. In *Dennis* we rejected a physician's argument that the Act required arbitration of a claim filed in June of 1977 concerning medical injuries which occurred in March and April of 1976. We held that the Act did not bar the Circuit Court for Prince George's County from hearing the action without prior arbitration.

In the present case we again find, the patient having sustained medical injuries prior to the effective date of the Act, that the trial court had jurisdiction to hear the case. We hold that the trial court committed no error in denying the Hospital's motion to dismiss.

## II. Equitable Estoppel

### A. No Replication Requirement

In its brief the Hospital states that Lehninger did not raise the issue of equitable estoppel, as a matter separate and distinct from fraudulent concealment, until after the close of all evidence in the case.

The appellant then quotes the trial judge's characterization of the equitable estoppel issue as being "a late starter." In its reply brief the appellant explains that these references demonstrate the appellee's failure to give notice of the intention to invoke equitable estoppel as a bar to the defense of limitations. The appellant concludes that Lehninger's assertion of the equitable estoppel theory was improper and should not have been heard. Maryland case law, according to the Hospital, required Lehninger to file "a special pleading raising the replication of estoppel."

The Hospital refers us to the cases of *Bean v. Stuart Petroleum Company,* 244 Md. 459, 224 A.2d 295 (1966), and *Bitting v. Home Insurance Company,* 161 Md. 56, 155 A. 329 (1931). In these cases the Court of Appeals either stated

or implied that equitable estoppel must be specially pleaded when it is relied on to avoid a defense set up in a special plea.

*Bean* and *Bitting,* however, must not be relied on because Md. Rule 312 (a) eliminated any general requirement for filing a replication to a responsive pleading, either at law or at equity. The Committee note for this rule explains that in 1974 Md. Rule 312 (a) was readopted without change for the specific purpose of negating any inference in the case law that a replication is required to a plea of limitations or any other plea.

The Hospital contends that in the absence of a special pleading, it had no notice of Lehninger's intent to invoke equitable estoppel. The record shows, however, that the Hospital's counsel did not raise the issue of notice when Lehninger's counsel shifted their argument from estoppel by fraudulent concealment to equitable estoppel by negligent misrepresentation. The issue of notice was not even presented in the appellant's brief, but first appears in the reply brief.

The trial court properly considered the application of equitable estoppel.

### B. No Estoppel of Defense of Limitations

Having directed verdicts in favor of the Hospital concerning the absence of fraud and the running of the statute of limitations, the trial judge reached a "tentative conclusion" that equitable estoppel as a bar to the defense of limitations remained a "legitimate issue for submission to the jury." Counsel for the Hospital objected and argued against this conclusion.

Explaining his conclusion to counsel, the trial judge stated in pertinent part:

> "With respect to 5-203, even if there were a fraudulent concealment of evidence of avascular necrosis, it was not concealment of the cause of

action. It was concealment of that injury and what 5-203 deals with is concealment of the cause of action. 5-203 does require proof of actual fraud as Mr. King has maintained. But we don't reach that issue because the evidence is clear that the cause of action was not concealed. The most it could be said to be concealed was the presence or greater risk of avascular necrosis. However, even though the professional malpractice decisions of the Court of Appeals seem to indicate, perhaps somewhere can be argued to indicate, that estoppel is inapplicable. As I read those cases in light of the line of equitable estoppel cases, I perceive that what the Court of Appeals is talking about is the parameters of the Discovery Rule and not the question whether or not in a given fact situation equitable estoppel could be invoked to prevent the defendant from invoking the statute of limitations.... And I think that the dictum in those cases which touches on the estoppel issue goes no further than to say that in this case we do not have sufficient evidence to give rise to equitable estoppel.... If one can sue and recover for negligent misrepresentation, it seems to me that those same facts would give rise to an estoppel to invoke the statute of limitations so that is sort of one of the basis for my conclusions. The facts in this case give rise to an estoppel issue."

The court then instructed the jury as follows:

"The law requires a plaintiff to file suit within a given period of time after the events complained of have occurred. This law is called the Statute of Limitations. In this case, the plaintiff did not file suit within the time required by the statute and the defendant has asserted the defense of limitations. The question to be answered by issue three is whether the defendant should be prevented from asserting the defense of limitations. A defendant may be prevented from asserting the defense of

limitations if he has *intentionally or negligently misrepresented any facts* to the plaintiff, and the plaintiff in reliance on the misrepresentation has failed to file suit on time.

In order for the defendant to be prevented from asserting the defense, the plaintiff must show it is more likely so than not, one, that the defendant *intentionally or negligently misrepresented facts* to the plaintiff. Two: That the plaintiff relied on the misrepresentation. And three: That because of the reliance on the misrepresentation failed to file suit on time. The defendant is not prevented from asserting the defense of limitations if the suit was not filed on time because of the plaintiff's own lack of diligence. The underlying question is whether under the particular facts of this case, *it would be unfair* to permit the defendant to assert the defense of limitations.

Now, with those things in mind your answer to question — or issue number three would be either yes or no." [Emphasis added].

After deliberation, the jury found the Hospital negligent with respect to diagnosis and treatment during the period of January 11 to 13, 1971; that this negligence caused Lehninger's injury; and that damages for this injury would be assessed in the amount of two million dollars ($2,000,000.00).

The Hospital was also found negligent with respect to diagnosis and treatment conducted on December 17, 1973, and that Lehninger was injured by that negligence. No damages were assessed, however, for the latter negligence.

Importantly, the jury decided that the Hospital should "be prevented from asserting the defense of limitations."

On appeal the Hospital renews its contention that as a matter of law the principle of equitable estoppel should not have barred the defense of limitations in the present case.

The appellant supports its contention with references to

cases in which Maryland courts refused to extend the doctrine of equitable estoppel to preclude a statutory defense, in the absence of fraud.

The appellee opposes this assertion by citing cases in which courts have estopped parties from raising defenses when their conduct was less than fraudulent.

Our examination of Maryland law leads us to conclude that the defense of limitations can only be barred by a defendant's fraud or conduct tantamount to constructive fraud. Negligence alone cannot estop a negligent party from asserting the defense of limitations.

Statutes of limitation serve the primary purpose of protecting defendants against claims brought after a period of time which was sufficient for a person of ordinary diligence to have brought an action. A time comes when a defendant can be secure in the reasonable expectation that the slate has been wiped clean of ancient obligations. By that time a defendant ought not be called on to resist a claim asserted after memories have faded and witnesses have disappeared. *Feldman v. Granger,* 255 Md. 288, 297, 257 A.2d 421 (1969).

Generally the protection afforded to a defendant can be deferred by the courts only if there existed some "insuperable barrier" to the plaintiff's assertion of his rights within the allotted time. *Southern Md. Oil Co. v. Texas Co.,* 203 F. Supp. 449 (D. Md. 1962). Moreover, a trend exists for courts to enforce statutes of limitations as expressions of legislative policy. *Annot.,* 44 A.L.R.3d 760, 765.

Maryland's legislature, however, has repeatedly passed remedial statutes for the purpose of enabling the plaintiff in an action at law to set up the fraud of a defendant in order to avoid a plea of limitations. *Herring v. Offutt,* 266 Md. 593, 295 A.2d 876 (1972). This legislative intent is presently expressed in Md. Cts. & Jud. Proc. Code Ann. § 5-203. Language for that section was derived from the former Md. Ann. Code art. 57, § 14, and from Acts 1868, ch. 357.

The present section operates to toll the statute of limitations when a party is kept in ignorance of his cause of action by his adverse party's fraud. *Watson v. Dorsey,* 265

Md. 509, 290 A.2d 530 (1972). Additionally, the party invoking the section must have exercised ordinary diligence to discover and protect his rights. *Ferrucci v. Jack,* 255 Md. 523, 258 A.2d 414 (1969).

Conduct less egregious than intentional fraud will not toll the statute of limitations. The Court of Appeals in *Public Utilities Company of Westminster v. Baile,* 152 Md. 371, 136 A. 825 (1927), rejected negligent misrepresentation as a basis for tolling the statute of limitations. The Court also rejected "ignorant" misrepresentation as justification for tolling the limitations period in *Bankers and Traders Building and Loan Assoc. v. Elliott,* 167 Md. 461, 175 A. 214 (1934).

The Court of Appeals does not allow any implied or equitable exception to be engrafted on the statute of limitations merely on the grounds that such exception would be within the spirit of the statute. *McMahan v. Dorchester Fert. Co.,* 184 Md. 155, 160, 40 A.2d 313 (1944). To the contrary, the Court looks to the public policy served by the defense of limitations, and permits it to function arbitrarily, without discrimination between the just and unjust claim, or the avoidable and unavoidable delay. *Walko v. Burger Chef Systems, Inc.,* 281 Md. 207, 210, 378 A.2d 1100 (1977), citing *Chase Securities Corp. v. Donaldson,* 325 U.S. 304, 314, 65 S. Ct. 1137, 1142, 89 L. Ed. 1628 (1945); *Accord, Decker v. Fink,* 47 Md. App. 202, 211, 422 A.2d 389 (1980), in which the defense of limitations barred a medical malpractice action brought ten months after the expiration of the three-year limitation period because the patient knew or should have known of the "grossly unprofessional" conduct of her physician during the limitation period.

In the present case, the trial judge ruled in favor of the Hospital on the running of the statute of limitations, having found insufficient evidence of fraud. Lehninger's counsel recognized this finding in his rebuttal closing argument when he characterized the case as "a matter of concealment through negligence," lacking any suggestion of deliberate concealment.

Because the issues of fraud and deliberate concealment were withdrawn by Lehninger at trial, it is inconsistent that the jury would be instructed to consider the Hospital's "intentional" conduct. Moreover, given the tradition of rigid enforcement of the defense of limitations, it is inconsistent that the jury would be instructed to consider the "fairness" of this defense. The trial judge, however, believed that Lehninger's case turned on "whether or not it would be even fair under the totality of the circumstances to permit the defendant in the face of his conduct to rely upon that defense." On the basis of fairness, the jury was instructed that the Hospital's negligent, but not outrageous, conduct could estop the defense of limitations.

3 J. Pomeroy, *A Treatise on Equity Jurisprudence* § 804 (5th ed. 1941), defines equitable estoppel as "the effect of the voluntary conduct of a party whereby he is absolutely precluded, both at law and in equity, from asserting rights which might perhaps have otherwise existed, either of property, of contract, or of remedy, as against another person, who has in good faith relied upon such conduct, and has been led thereby to change his position from the worse, and who, on his part, acquires some corresponding right, either of property, of contract, or of remedy." (Footnote omitted.) *See Pearre v. Grossnickle,* 139 Md. 1, 8-9, 114 A. 725, 728 (1921); *Rodgers v. John,* 131 Md. 455, 462, 102 A. 549, 551 (1917).

Whether the doctrine is to be applied in a given case is dependent solely upon the particular facts and circumstances of that case. *Rodgers v. John, supra* at 462, 102 A. at 551. Unless the party against whom the application of the doctrine is sought has been blameworthy "of some unconscientious, inequitable or fraudulent act of commission or omission upon which another has relied and been misled to his injury, the doctrine will not be applied." *Id.; Pearre v. Grossnickle, supra,* 139 Md. at 9, 114 A. at 728-29. *See also Savonis v. Burke,* 241 Md. 316, 319-20, 216 A.2d 521, 523 (1966); *Bayshore Indus., Inc. v. Ziats,* 232 Md. 167, 176, 192 A.2d 487, 492 (1963); *Dixon v. Process Corp.,* 38 Md. App. 644, 382 A.2d 893, *cert. denied,* 282 Md. 731 (1978), in which we held that the "clear and convincing proof" stan-

dard applied to constructive as well as actual fraud in estoppel cases. Some form of fraud, actual or constructive, is an essential element of equitable estoppel in Maryland case law. *Cityco Realty Co. v. Slaysman,* 160 Md. 357, 363, 364, 153 A. 278, 281 (1931), cited in *Bean v. Stuart Petroleum, supra.*

Maryland courts have infrequently addressed the juxtaposition of the defense of limitations and the doctrine of equitable estoppel. Fewer still are the cases involving estoppel on the basis of negligent misrepresentations allegedly made by a defendant. We have already seen that the courts rigorously protect the defense of limitations; we also find that Maryland courts have recently become reluctant to sustain any action for a tort of negligent misrepresentation in the absence of deceit. Note, *Deceit and Negligent Misrepresentation in Maryland,* 35 Md. L. Rev. 651, 666 (1976).

Discussing Maryland case law on negligent misrepresentation, the local federal court in *George Byers Sons, Inc. v. East Europe Import Export,* 488 F. Supp. 574 (D. Md. 1980), found that:

> "The present state of the law in this area, however, can only be described as highly unsettled, in light of the latest Court of Appeals decision in *Delmarva Drilling Co. v. Tuckahoe Shopping Center, Inc.,* 268 Md. 417, 302 A.2d 37 (1973).
>
> The *Tuckahoe* case was tried as an action for negligent misrepresentation, and damages were awarded to a third-party plaintiff on that theory. Reversing, the Court held that 'there can be no recovery in an action for deceit on the ground of negligent misrepresentation.' 302 A.2d at 41. Read literally, this case would appear to recognize an action only for deceit or fraudulent misrepresentation, requiring an element of scienter. *But see Regiec [Local 75, United Furniture Workers v. Regiec,* 19 Md. App. 406, 311 A.2d 456 (1973)]. In any event, recovery on a claim

of negligent misrepresentation in Maryland is no longer clear." *Id.* 488 F. Supp. at 586.

This "muddled state of Maryland law" [1] was not addressed by the Court of Appeals when it recently affirmed a recovery for deceit and negligent misrepresentation in *Chesapeake Financial Corp. v. Laird,* 289 Md. 594, 425 A.2d 1348 (1981).

The trial court and the appellee found authority for the creation of an estoppel, because of the defendant's misrepresentation, from the decision of *Addressograph-Multigraph Corp. v. Zink,* 273 Md. 277, 329 A.2d 28 (1974).

In *Zink, supra,* 273 Md. at 282, the Court of Appeals quoted Judge Oppenheimer's statement in *Travelers Indemnity Co. v. Nationwide Construction Corp.,* 244 Md. 401, 414, 224 A.2d 285, 292 (1966):

> "We have repeatedly stated that whether or not an estoppel exists is a question of fact to be determined in each case. Gould v. Transamerican Associates, *supra,* at 224 Md. 297, 167 A.2d 905; Liberty Mut. Ins. Co. v. American Auto. Ins. Co., 220 Md. 497, 501, 154 A.2d 826 (1959); and cases therein cited. Wrongful or unconscientious conduct on which the other party relies, to his detriment, is generally an element of estoppel in the particular circumstances, see Liberty Mut. Ins. Co. v. American Auto. Ins. Co., 220 Md. at 500, 154 A.2d 826, but an estoppel may arise even when there is no intent to mislead, if the acts of one party cause a prejudicial change in the conduct of the other. Harrison v. McCarty, 178 Md. 377, 13 A.2d 544 (1940) . . . ."

After quoting *Zink, supra,* the appellee concluded in his brief that "a doctor's misrepresentations regarding the plaintiff's condition, even if unintentional or mistaken, will act to bar the defense of limitations."

---

1. Judge Blair provided this alliterative description in George Byers Sons, Inc., *supra,* 488 F. Supp. at 586.

We do not interpret the *Zink* statement as requiring such a drastic effect, because the facts and law of that case did involve the defense of limitations. Our examination of *Zink, supra,* shows us that the case concerned an action for damages for breach of warranty. The Court of Appeals affirmed the decision that a manufacturer's conduct could equitably estop that party from asserting lack of privity as a defense.

The manufacturer's conduct consisted of providing an express warranty to a lessor, and then voluntarily extending the benefits of the warranty to a third-party lessee. Limitations was not raised as a defense by the manufacturer, nor discussed by the Court in *Zink.*

The Court of Appeals did, however, discuss the doctrine of estoppel vis-a-vis the defense of limitations in *Leonhart v. Atkinson,* 265 Md. 219, 289 A.2d 1 (1972). Because the *Leonhart* case explicitly established Maryland law on the relationship between estoppel and the limitations defense, and because the facts of the case involved an action to recover for professional malpractice in the absence of fraud, we find the present case controlled by *Leonhart, supra.*

In that case, individuals accepted and acted on the advice of their accountant, Atkinson, concerning the calculation of their taxes. The Internal Revenue Service challenged the recommended calculation and assessed a tax deficiency against the Leonharts. The accountant, however, continued to prepare their taxes, and repeatedly gave assurances that the IRS position was incorrect. After the courts refused to reverse the assessment the individuals sued their accountant for malpractice.

In response to the accountant's plea of limitations, the Leonharts conceded that no fraud or concealment occurred that would toll the statute, but they asserted that the accountant's statements lulled them into a false sense of security which delayed the start of litigation.

Answering the Leonharts' request for the imposition of an equitable bar to the defense of limitations, Judge Digges concluded:

"The Leonharts apparently sensed the futility of pursuing this attack on the limitations plea and instead choose to rely almost exclusively on the doctrines of waiver and estoppel. Appellants have not cited, nor have we been able to find a case with circumstances similar to those existent here, in which these equitable doctrines have been invoked. In equity the requirements necessary to avoid a bar by limitations on the ground of ignorance correspond to the test contemplated by Art. 57, § 14. Piper v. Jenkins [207 Md. 308, 318, 113 A.2d 919 (1955)]. The appellants seemingly are attempting to raise a § 14 defense to a plea of limitations under the guise of equitable estoppel and waiver, by claiming reliance on Atkinson's repeated assurances that his advice was correct. In their brief the Leonharts argue that appellee ought to be prohibited from using the statute as a bar since his conduct 'obscure[d] the [appellants'] perception of the wrong or prevent[ed] discovery' of it. Here, appellants have not alleged anything tantamount to constructive fraud, nor have they demonstrated that appellee has been guilty of 'any unconscionable, inequitable or fraudulent act of commission or omission upon which [another] relied and has been misled to his injury.' Jordan v. Morgan, Adm'x, 252 Md. 122, 132, 249 A.2d 124, 129 (1969). We do not think appellants have alleged facts from which waiver or estoppel could be found. All they have shown is that after appellee erroneously advised them, he continually maintained his position and recommended that the matter be pursued in the tax court. It was not alleged that the accountant at any time asked the Leonharts to forbear bringing suit against him. It was also not alleged that Atkinson indicated he would waive the defense of limitations should the appellants later make a claim, or that he induced them not to file suit by giving assurances that he

would settle any claim they might make. Jordan v. Morgan, Adm'x, supra; Cornett v. Sandbower, Adm'r, 235 Md. 339, 201 A.2d 678 (1964); Chandlee v. Shockley, 219 Md. 493, 150 A.2d 438 (1959); Wright v. Wagner, 182 Md. 483, 34 A.2d 441 (1943). See also Bayshore Industries, Inc. v. Ziats, 232 Md. 167, 192 A.2d 487 (1963). (This case applied Art. 101, § 39 (c) Code (1957, 1964 Repl. Vol.) a statutory recognition of the doctrine of estoppel in workmen's compensation cases.) In the present appeal the only conclusion that can be drawn is that the delay in filing the suit was due to the lack of diligence on the part of the Leonharts." *Leonhart, supra,* 265 Md. at 227, 228.

*Leonhart* reasonably stands for the proposition that when a professional practitioner renders an erroneous opinion to his patient or client, and proceeds in good faith to act on the basis of that opinion, a subsequent showing of negligence alone, will not preclude the practitioner from raising a defense of limitations. Applying this proposition to the present case we hold that the trial judge committed reversible error in permitting the question of equitable estoppel to go to the jury.

Supporting our application of the *Leonhart* holding to the present case stands the fact that the Court of Appeals has previously required allegations of "fraudulent concealment" and "gross negligence" in order to prevent the doctrine of laches from barring claims brought more than three years after the accrual of an action. *Parish v. Milk Producers Ass'n,* 250 Md. 24, 94, 95, 242 A.2d 512 (1968). Similarly the highest courts of other jurisdictions have refused, in the absence of fraudulent misrepresentation or concealment, to create an equitable estoppel precluding the defense of limitations. See *White v. White,* 388 A.2d 386, 387 (Vt. 1978); *Millett v. Dumais,* 365 A.2d 1038, 1041 (Me. 1976); and *Florio v. Cook,* 399 N.E.2d 947 (N.Y. 1979).

Furthermore, in light of the Court of Appeals finding of a lack of diligence on the part of the individuals in *Leonhart,*

*supra,* a question arises as to the legal sufficiency of Lehninger's proof of his diligence in the present case. Supporting its motion for judgment n.o.v., the Hospital contended that, as a matter of law, diligence sufficient to raise an estoppel required Lehninger to file suit within a reasonable time after he became aware of his injuries. The Hospital referred the trial court to the Court of Appeals decision in *Nyitrai v. Bonis,* 266 Md. 295, 292 A.2d 642 (1972).

In *Nyitrai,* the Court of Appeals held that the plaintiff in an estate administration case delayed instituting action for services for an unreasonable length of time, and was barred by a defense of limitations. To the plaintiff's request for creation of an estoppel, Judge MacGill [2] answered:

"Settlement negotiations alone, however, do not raise an estoppel, 51 Am. Jur. 2d, Limitations of Actions, § 444, especially where there is no showing, and there was none here, that the appellee or his counsel held out any inducements not to file suit or indicated that limitations would not be pleaded. Leonhart v. Atkinson, 265 Md. 219, 289 A.2d 1 (1972); Jordan v. Morgan, Administrator, 252 Md. 122, 249 A.2d 124 (1969); Cornett v. Sandbower, Administrator, 235 Md. 339, 201 A.2d 678 (1964). Even after the settlement negotiations were terminated, there was *a delay of almost eleven months thereafter before suit was filed.* It has been recognized that in order for estoppel to plead the statute of limitations to be effective against a defendant, the plaintiff must have instituted the appropriate legal proceedings seasonably after becoming aware that such proceedings would be required. *See* Annot., 39 A.L.R.3d 127, 143, § 6, Duration of Estoppel. . . . In Regus v. Schartkoff, 156 Cal. App. 2d 382, 319 P.2d 721 (1957), it was held that a delay of nearly two years in bringing suit was

---

2. Chief Judge of the Fifth Judicial Circuit, specially assigned.

unreasonable after the circumstances inducing the estoppel were no longer in effect. In Property 10-F, Inc. v. Pack and Process, Inc., 265 A.2d 290 (D.C. App. 1970), it was held that the defense of limitations was not barred when there was a delay of over two years in bringing suit after the grounds creating the estoppel had ceased to operate. . . ." *Nyitrai,* 266 Md. at 300, 301. [Emphasis added.]

The Court of Appeals held in *Nyitrai, supra,* that an eleven month delay, following the cessation of an alleged justification for an estoppel, vitiated the plaintiff's claim of the requisite diligence for an estoppel. In the present case, Lehninger waited nineteen months, from the time of his tennis court accident in September of 1977.

The trial judge determined that Lehninger did not present sufficient evidence of an "injustice" that would toll the running of the statute of limitations. See *Harig v. Johns-Manville Products Corp.,* 284 Md. 70, 80, 412 A.2d 1240 (1980). The judge, however, permitted the preclusion of the limitations defense on the basis of "fairness," considering the nineteen month delay in filing to be,

". . . merely one circumstance to be considered in the totality of circumstances of the applicability of equitable estoppel to the facts of this case, and was a proper and appropriate factor for discussion and argument to the jury on that issue."

We disagree with this characterization of the significant delay in filing. In light of the *Nyitrai* decision, which held that eleven months constitutes an unreasonable delay for the purpose of equitable estoppel, the trial judge should not have found present in Lehninger's evidence the requisite elements of an estoppel capable of barring the limitations defense. Moreover, the trial judge, and not the jury, was responsible for considering the sufficiency of the facts necessary for the application of preclusion of the statute of limi-

tations. *Harig, supra,* 284 Md. at 74, 75; *Moy v. Bell,* 46 Md. App. 364, 370, 416 A.2d 289 (1980).

Thus, *Leonhart* and *Nyitrai* require that the judgment of the Baltimore City Court must be reversed.

*Judgment reversed.*

*Costs to be paid by appellee.*